WESTARK SPECIALTIES INC. *v.* The STOUFFER FAMILY LTD. PARTNERSHIP, d/b/a Automotive Components, Inc.

92-84                                                          836 S.W.2d 354

Supreme Court of Arkansas
Opinion delivered July 13, 1992

*Warner & Smith*, by: *Joel D. Johnson*, for appellant.

*Stephen M. Sharum*, and *William J. Kropp, III*, for appellees.

DAVID NEWBERN, Justice. This is a rather complicated negligence case in which the principal question is whether evidence should have been admitted about a previous event in which the defendant, now the appellant, Westark Specialties,

Inc. (Westark), paid a claim similar to the one made here by the appellee, The Stouffer Family LTD. Partnership, d/b/a Automotive Components, Inc. (Automotive). Our holding is that Automotive did not comply with its duty to produce evidence of the similarity of the claims, and thus the case must be reversed and remanded. Other issues which may arise upon retrial will also be addressed.

Westark owns a warehouse complex in Fort Smith which was built early in this century and purchased by Westark in April, 1988. It is equipped with an aging sprinkler system for fire prevention. The system operates on a dry line principle. The portions of sprinkler pipe located inside the warehouse buildings contain air holding back the water until the system is triggered and air released. The pipes then fill with water and the sprinkler heads spray. Routine maintenance of the system included periodic pressure checks to insure pressure was adequate and that the pipes inside the warehouses were drained of water.

Automotive leased several buildings encompassing 119,000 square feet in the complex. The lease required Westark to maintain the sprinkler system. It also provided that Westark was not liable for any damages due to malfunctions unless Automotive gave written notice of a need for repair. Finally, the lease provided that Automotive was to carry insurance on the warehouse contents with a waiver of subrogation clause sufficient to protect Westark from loss.

Sometime between December 24 and 26 of 1989, during a period of extremely cold weather, water trapped in the sprinkler pipes froze in the warehouse areas leased by Automotive. The pipes cracked, and more than 3,000,000 gallons of water sprayed on Automotive's inventory, resulting in damage from rust and freezing.

Automotive sued Westark alleging negligence and breach of contract for not maintaining the sprinkler system. Westark answered that Automotive failed to cooperate in maintaining the system, and that Automotive breached the lease agreement by failing to maintain insurance on the contents. Prior to trial, Automotive withdrew the breach of contract claim and elected to proceed on negligence.

The jury returned a verdict for Automotive for $700,000. Westark filed a motion for new trial which was denied.

### 1. The prior incident

Westark defended on two bases. First, it argued that Automotive stacked its inventory from floor to ceiling and refused to move it to allow Westark employees to maintain the sprinkler system properly. Second, Westark contended Automotive breached the lease by failing to have content insurance.

After Automotive rested and the defense began its case David Ashby, Controller and Secretary-Treasurer of Westark, testified. On cross-examination by Automotive's counsel, questions about an earlier water loss incident involving another of Westark's tenants, a furniture company owned by a Mr. Stanley, were asked. Counsel for Westark objected on relevancy grounds, and the objection was sustained. A bench conference ensued at which Automotive argued that the earlier loss was to a tenant who had the same lease and the same kind of loss, and thus Automotive was entitled to show that Westark had paid a similar claim. Counsel for Automotive stated, "they are contending that they should not be obligated because of this content but this is a similar event that happened just like this that their Company paid. We are entitled to show that to the jury that in one case they paid it." Westark's counsel argued that there were different facts and circumstances in the other incident to which Automotive responded that Westark had the same duty to maintain the system. The Court ruled that the evidence was highly relevant but was too prejudicial to come in. Automotive then asked to make a record of proffered testimony, and the jury was excused.

Counsel for Automotive then asked Ashby about the other incident. Ashby testified that the incident had occurred in 1988 when a defective sprinkler system valve triggered but stated he did not know whether the leases were similar in requiring the tenant to have insurance on the contents to cover any loss. Westark again objected to Ashby continuing to testify on the other incident, and the Court again sustained saying "unless you can show something else I'm going to sustain the objection." Counsel for Automotive then stated "I guess I can subpoena Mr. Stanley in rebuttal and have him bring his lease." Counsel for Automotive asked the Court if he would permit him to put Mr.

Stanley on the stand if he was called and the Court stated "I am inclined if we are going on the theory that this clause takes you out and you can show the lease[s] are identical then I would be inclined to show that at least from some reason they have either waived that—I think if you can show that the leases are identical at this point I'd be inclined to let him show that or ask him that."

After further discussion the Court stated "as far as this witness is concerned I'm going to preclude you from going into it Mr. Sharum [counsel for Automotive]. You get your witness here that knows about it." Mr. Sharum replied "[w]e will subpoena and have him bring all of his leases."

After Mr. Sharum finished questioning Ashby without further reference to the prior incident the Court called counsel to the bench and stated:

> I think that I have created some confusion. I do not intend to let Steve [Sharum] bring this rebuttal witness unless this witness — you ask him under identical circumstances if he hasn't paid and if he denies it or says that he doesn't know I think the identical circumstances — I'm assuming that he is going to say since the lease is different he will say nothing and perhaps no. I think you are going to at least broach this enough that you can rebut it. You don't have anything now to be in the nature of a rebuttal. And I think it is something that you will need to bring up so you can rebut it — but you have to be careful.

Over continuing objections from Westark, Ashby was questioned about the prior occurrence and the fact that Westark wound up paying the claim. Automotive did not ask Ashby if the circumstances of the prior payment were identical and did not call the other tenant or present his leases.

At the close of all evidence Westark moved for a mistrial on the ground that Automotive had been allowed to introduce evidence regarding the prior incident without showing its similarity. Westark also sought a ruling prohibiting Automotive from referring to the other incident in closing argument. Both motions were denied by the Court stating:

> [T]here was an in camera hearing in which the witness testified before the Court permitted the witness to testify

before the jury, and in that hearing the witness indicated that there was damage to the sprinkler system prior to that. He indicated that he did not know whether or not he had the same contract. Counsel for the defendant failed to cross examine as the Court expected on that issue to show the jury that the contracts were not the same, and it was not developed, but that's why that was permitted. The Court felt it was relevant and at least based on the theory that the defendants were claiming that they were not relying on the provision about the Lease on the insurance requirement. That's why it was let in.

The foregoing shows that Automotive made no effort to bring in the prior occurrence during its case in chief but sought to bring it in during the defense case or to at least create an allegation for rebuttal. Automotive argues in its brief and oral presentation that this evidence was relevant and should have been before the jury to rebut the comparative negligence assertions of Westark.

■ The general rule with respect to admissibility of evidence of similar occurrences is that it is admissible only upon a showing that the events arose out of the same or substantially similar circumstances, and the burden rests on the party offering the evidence to prove that the necessary similarity of conditions exists. *Fraser v. Harp's Food Stores, Inc.*, 290 Ark. 186, 718 S.W.2d 92 (1986); *Carter v. Missouri Pacific Railroad Co.*, 284 Ark. 278, 681 S.W.2d 314 (1984); *Houston General Ins. Co. v. Arkla Gas Co.*, 267 Ark. 544, 592 S.W.2d 445 (1980); *Arkansas Power & Light Co. v. Johnson*, 260 Ark. 237, 538 S.W.2d 541 (1976); *Fulwider v. Woods*, 249 Ark. 776, 461 S.W.2d 681 (1971). The burden on Automotive was to show the similarity in the events, and that burden did not shift to Westark, contrary to the implication of the final ruling.

The ultimate purpose of the evidence was to show that Westark had paid for water damage to a tenant's inventory. From that evidence the jury was left to draw the negative inference that Westark had waived the content insurance requirement for that tenant. Absent presentation of that lease and testimony concerning the basis for the prior payment there is no way of reaching that conclusion without rampant speculation. The fact that there was

a valve malfunction may have been due to a faulty valve alone and may only peripherally implicate maintenance. It could also have occurred after notice and a failure to act, thereby triggering Westark's obligation under the contract.

■ As there was no showing by Automotive that the occurrences were similar, admission of the testimony enabled the jury to conclude Westark's refusal to pay in the case now before us was unjustified. It may well have been that Westark's payment in the prior case was a part of their obligation under the lease, or it could have been pursuant to a waiver of the requirement as postulated by Automotive, but it was Automotive's burden to prove the facts.

### 2. Election of remedies

■ Westark filed a pre-trial motion requesting the Court to require Automotive to elect between breach of contract and negligence. Automotive chose to proceed on the negligence cause of action. Westark objected and argued that the only "remedy" available to Automotive was a breach of contract cause of action. The argument is without merit as the doctrine of election of remedies applies to remedies, not to causes to action. *Henderson Methodist Church* v. *Sewer Improvement Dist., No. 142,* 294 Ark. 188, 741 S.W.2d 272 (1987); *Butler Bros.* v. *Hames,* 193 Ark. 77, 97 S.W.2d 622 (1936). Quoting from *Bertig Bros.* v. *Independent Gin Co.,* 147 Ark. 581, 228 S.W.2d 392 (1921), we wrote in the *Henderson* case:

> [W]ithin the general doctrine of election of remedies, . . . it is the duty of the party, where he has two remedies, one of which is limited in scope and the other general in scope, to adopt, in the first instance, the remedy which will give complete relief; otherwise he is bound by his election to pursue the limited remedy.

This is simply a prohibition against more than one recovery on inconsistent remedies and not a requirement that a plaintiff choose only one cause of action. There is no such requirement. *See* Ark. R. Civ. P. 8(e)(2) and 18(a).

Westark also argues that our decision in *Quinn Companies, Inc.,* v. *Herring-Marathon Group, Inc.,* 299 Ark. 431, 773 S.W.2d 94 (1989), requires that a plaintiff not transform a

breach of contract action into a tort action. That only partially states the holding of the case. We stated, "if the facts warrant, a party to a contract may sue on an independent tort claim. But a plaintiff may not transform a breach of contract action into a tort claim by alleging the breach was motivated by malice. The breach itself simply is not a tort."

■ The distinguishing characteristic which transforms a breach into a tort was defined in *L.L. Cole & Sons, Inc.* v. *Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984) where we said:

> Generally, a breach of contract is not treated as a tort it it consists merely of a failure to act (nonfeasance) as distinguishable from an affirmatively wrongful act (misfeasance). [citations omitted] The courts, however, have tended to extend the tort liability for misfeasance whenever the misconduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests.

■ Westark argues in a parenthetical fashion that there were no allegations of foreseeability or unreasonable risk of harm and that Automotive did not prove foreseeability. There is no requirement that a party plead foreseeability in a complaint, and water damage from a poorly maintained sprinkler system is obviously foreseeable. The jury clearly found the evidence sufficient to support the showing of breach of the duty to maintain the system. There is no error in the case proceeding on a tort theory.

### 3. Inconsistent verdict

■ The two employees of Westark responsible for the day to day maintenance of the sprinkler system were sued along with the corporation. The law on this issue is clear:

> If the employer's liability is attributable solely to the employee's negligence, a verdict in favor of the employee exonerates the employer as well. But if there is independent actionable negligence on the part of the employer then he may be held liable even though the employee is found to have been free of fault. Thus the question is whether the evidence establishes a cause of action against the [employer] . . . without regard to any negligence of its [employee]. . . . *C.R.I. & P. Railroad Co.* v. *Davis, Adm'r*, 239 Ark. 1059, 397 S.W.2d 360 (1965).

■ In this case the expert witness for Automotive testified that the water trapped in the pipes was 100% the fault of the sagging of the warehouse roof, not any failure of maintenance by the employees of Westark. Nothing suggests that it was the obligation of the employees to replace the roof of the warehouse in connection with maintaining the system. There is evidence supporting an independent cause of action against Westark.

### 4. Subsequent remedial measures

Westark argues that the fact the sprinkler system was turned off, and remained off after the damage to the inventory, was evidence of a subsequent remedial measure to be excluded. A.R.E. Rule 407. Automotive responded that the evidence was offered to explain that certain tests could not be conducted due to the shut-off. Automotive also responded that testimony could be admissible to suggest that, if the system had been shut-off as a precautionary measure before the cold weather hit, the amount of damage would have been limited.

■ The shut-off of the system was not a remedial measure in the sense of Rule 407. It is clear from the testimony that the system was ruptured in several places and could not be turned back on. The system obviously was still broken and the situation had not been "remedied" at all.

### 5. Offer of compromise

Shortly after the incident, Automotive wrote to Westark and offered to settle the matter without litigation for the sum of $145,000. Automotive's letter stated that the sum did not include all the damages and was submitted for the purpose of a quick settlement without litigation. The letter was proffered by Westark to show bias and prejudice in the enlargement of the damages, but the Court excluded it as an offer of compromise pursuant to A.R.E. 408. The letter clearly stated there was no final damage estimate and that it was an offer predicated on not going to court. It is an offer of compromise.

■ Westark relies on *Enterprise Sales Co. Inc.* v. *Barham*, 270 Ark. 544, 605 S.W.2d 458 (1980), in which the appellant sought to show an offer to purchase property they had damaged for a price greater than the estimated value of the land in the

plaintiff's complaint. The testimony was excluded at trial but this Court thought the testimony would be admissible as impeachment in view of the plaintiff's assertion that the property he purchased was not worth the amount of the offer. We said the question would not have been permissible if it had been for the purpose of showing the value of the property rather than discrediting the plaintiff's assertions. The *Enterprise Sales* case supports the decision of the Trial Court in this case because the offer was submitted to show the amount of damages differed from the original estimate. There is nothing impeaching about the letter. It clearly stated undiscovered damages would be greater than those sought. It shows nothing more than a partial estimate of damages and has no probative value on the question of bias. The Court was correct in excluding the evidence.

Reversed and remanded.

BROWN, J., not participating.