TERMINIX INTERNATIONAL COMPANY *v.* James
STABBS and Iris Stabbs

96-488                                    930 S.W.2d 345

Supreme Court of Arkansas
Opinion delivered October 14, 1996

*Lyons, Emerson & Cone,* by: *Jim Lyons,* for appellant.

*Mike Everett,* for appellees.

BRADLEY D. JESSON, Chief Justice. Appellees James and Iris Stabbs filed a complaint in circuit court alleging that a home which they had purchased in 1992 had lost all its value due to termite infestation. The lawsuit named the appellant Terminix and four others as defendants. Terminix asked the trial judge to compel arbitration of the case. Part of the case was ordered into arbitration, but the Stabbses were allowed to pursue the remainder of their case in circuit court. Terminix appeals from that ruling and contends that the entire case should have been ordered into arbitration. We affirm the trial court's decision.

In October of 1992, Mr. and Mrs. Stabbs began negotiating to buy a home in the Blytheville area. The home was owned by Mr. and Mrs. Lambert. The sale was handled by Logan Real Estate, although it is not clear whether Logan was operating as the agent for the buyer or the seller. On October 15, 1992, Terminix was engaged to perform certain repairs on the substructure of the home. A contract entitled "Sub-Structure Service Agreement" was entered into whereby Terminix agreed to place two sets of supports under the bathroom for $300.00. The purchaser on the contract was listed as "Logan Real Estate for James W. Stabbs," and the contract was signed by a representative of Logan Real Estate. On October 19, 1992, Terminix issued a "Termite Protection Plan" to James W. Stabbs. The Plan provided that, in exchange for an annual fee, Terminix would provide protection against subterranean termite damage occurring after October 19, 1992. Both of these documents contained arbitration clauses.

On October 20, 1992, Terminix executed a Veterans Administration-Department of Housing and Urban Development form entitled, "Wood Destroying Insect Information Existing Construction." The information in the form was to be used in evaluating property for a VA or HUD loan. Terminix stated in the form that the property had once contained visible evidence of infestation but noted that the problem had been corrected by the use of additional supports. The form was signed by a Terminix representative on October 20, 1992 and by Mr. and Mrs. Stabbs, who acknowledged its receipt, on October 23, 1992. Closing occurred on October 23, 1992, with the Stabbses paying $53,500 for the property.

On June 15, 1995, Mr. and Mrs. Stabbs filed suit against Terminix, Logan Real Estate, Logan Finance Company, and Mr. and Mrs. Lambert for "fraud and deceit and for breach of contract." The Logan defendants and the Lamberts were sued for misrepresentation; Terminix was sued on the contract count. The Stabbses alleged that Terminix had breached the October 20 VA-HUD "contract" by failing to properly inspect the premises, failing to correct termite damage, and failing to notify Mr. and Mrs. Stabbs of the extent of the termite damage. The October 15 Sub-Structure Service Agreement and October 19 Termite Protection Plan were not mentioned. The prayer for relief sought the purchase price of the house, $53,500, from all defendants jointly and severally, punitive damages from the Lambert and Logan defendants, and attorney fees from Terminix.

Terminix filed a motion to compel arbitration of the case on the grounds that both the Sub-Structure Service Agreement and the Termite Protection Plan contained arbitration clauses. Mr. and Mrs. Stabbs responded that they were not basing their contract claim on those instruments but on the VA-HUD "contract" which had no arbitration clause. Additionally, they said, they had not signed either the Sub-Structure Agreement or the Protection Plan.[1]

Prior to the hearing on the motion to compel arbitration, Mr. and Mrs. Stabbs amended their complaint to remove all reference to a breach of contract claim. Instead of alleging that Terminix had breached its contract, they claimed that Terminix had been negligent in failing to properly inspect the property and in failing to report its condition. Terminix filed no objection to or motion to strike the amended complaint.

█ After a hearing, the trial judge split the cause of action into arbitrable and non-arbitrable claims. He declared that damages occurring after October 19, 1992, were subject to arbitration; all other claims were cognizable in a negligence action. Terminix appeals and argues that the entire case should be subject to arbitration. We note that a trial court's denial of a motion to compel arbitration is an appealable order. *See American Ins. Co. v. Cazort*, 316 Ark. 314,

---

[1] The Stabbs's status as nonsignatories to the Sub-Structure and the Termite Protection Plan was not fully explored below; therefore we do not have sufficient information to consider that issue on appeal.

871 S.W.2d 575 (1994).

Terminix contends that, because the arbitration clauses in the Sub-Structure Agreement and the Protection Plan cover any controversy or claim "arising out of or relating to" those agreements, Mr. and Mrs. Stabbs have agreed to arbitrate their claims. To a great extent, Terminix relies on case law from the federal courts and from other jurisdictions to argue that use of such broad language — "arising out of or relating to" — renders arbitrable any claim with a connection to the contract. However, the Federal Arbitration Act and the laws of other jurisdictions do not restrict the scope of arbitration as we do in this state. Under Arkansas law, certain matters are not arbitrable, regardless of the language used in an arbitration agreement. Written agreements to arbitrate have no application to tort matters, Ark. Code Ann. § 16-108-201 (1987) (in effect at the time these contracts were executed); *see also Lancaster v. West*, 319 Ark. 293, 891 S.W.2d 357 (1995); *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985), and the complaint in effect at the time of the hearing stated a cause of action in tort rather than contract. In the absence of objection by an opposing party asserting prejudice or undue delay, a party may amend his complaint at any time without leave of the court. ARCP Rule 15(a). Additionally, we have recognized that the existence of a contractual relationship between parties does not preclude the institution of a tort action. A party to a contract may sue on an independent tort claim. *Quinn Cos. v. Herring-Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989). That is not to say that we will declare a matter non-arbitrable merely because of the manner in which a party chooses to characterize his action. The claim must legitimately sound in tort.

In *Westark Specialties, Inc. v. Stouffer Family Ltd. Partnership*, 310 Ark. 225, 836 S.W.2d 354 (1992), we addressed the issue of whether a party to a contract had legitimately stated a cause of action in tort. Westark leased a building to Stouffer. The lease provided that Westark would maintain the building's sprinkler system. During the course of the lease, the sprinkler pipes froze, cracked, and flooded the premises. Stouffer's inventory was damaged and it filed suit against Westark for negligence and breach of contract. Westark, having certain defenses available to it under the contract, moved to strike the tort claim. We said the following:

Generally, a breach of contract is not treated as a tort if it

consists merely of a failure to act (nonfeasance) as distinguishable from an affirmatively wrongful act (misfeasance). The courts, however, have tended to extend the tort liability for misfeasance whenever the conduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests.

We decided that water damage from a poorly maintained sprinkler system was foreseeable and that the action was cognizable in tort. Similarly, the Stabbs's amended complaint contained allegations against Terminix that could either be characterized as affirmatively wrongful acts or misfeasance of the type that would result in a foreseeable, unreasonable risk of harm. A termite company's failure to properly inspect a residence and report on the extent of damage can be said to involve a foreseeable, unreasonable risk of harm to potential buyers of the residence. Mr. and Mrs. Stabbs stated a legitimate tort claim, and the trial court was correct in refusing to compel arbitration of that portion of the action.[2]

Affirmed.

---

[2] In fact, the claim was more aptly characterized as a negligence action rather than a contract action from the beginning. The Stabbs's attorney admitted that he initially tried to establish a breach of contract claim so that he might recover attorney fees pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1994).