2009 Ark. App. 259

**CEI ENGINEERING ASSOCIATES, INC., Appellant,**

v.

**ELDER CONSTRUCTION COMPANY, Appellee.**

**No. CA 08–601.**

Court of Appeals of Arkansas.

April 8, 2009.

Lingle Law Firm, by: James G. Lingle, Rogers, for appellant.

Keisling Pieper & Scott, PLC, by: John M. Scott and Meredith K. Lowry, Fayetteville, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant CEI Engineering Associates, Inc., (CEI) appeals an order of the Washington County Circuit Court denying its motion to compel arbitration of claims asserted against it by appellee Elder Construction Company (Elder). After first finding that some of Elder's claims were subject to arbitration and allowing Elder time to amend its complaint, the trial court ultimately found that all of Elder's claims sounded in tort and were thus not subject to arbitration under the Arkansas Uniform Arbitration Act (AUAA).[1] On appeal, CEI

1. The AUAA is found at Arkansas Code Annotated sections 16-108-201 to -224 (Repl. 2006). The trial court found that the AUAA applied, rather than the Federal Arbitration

concedes that two counts of Elder's amended complaint present legitimate tort claims, which are not suitable for arbitration. We agree that those claims sound in tort, and we affirm the trial court's ruling as to those two claims. CEI argues, however, that Elder's remaining five claims sound in contract and are, therefore, subject to arbitration. We find merit in this argument and reverse and remand for the entry of an order compelling arbitration of these claims.

In 2005, Elder engaged CEI to perform engineering services in connection with six construction projects that are referred to as Fox Creek, Sagefield, Chester, Hidden Lake, Avignon Court, and Glenstone. The parties' agreement is contained in separate proposals submitted by CEI for each project. The proposals incorporated by reference a document entitled "Standard Terms and Conditions," which contained the following provision:

DISPUTE RESOLUTION

Client and CEI agree to attempt to settle all claims, disputes or controversies arising out of, or in relation to the interpretation, application or enforcement of the Agreement by direct discussions; however, absent resolution by direct discussions, they agree to attempt to settle disputes by formal mediation according to the Construction Industry Mediation Rules of the American Arbitration Association. Absent resolution by mediation, they agree to binding arbitration under the Rules of the American Arbitration Association.

On October 4, 2007, Elder filed a complaint against CEI alleging negligence, fraud, and breach-of-contract claims concerning the Fox Creek and Sagefield projects. With regard to the Fox Creek project, Elder asserted that its purchase of the property was subject to a contingency that the land had access to adequate sewage; that CEI negligently concluded and advised that the property had such access; and that Elder purchased the property for $600,000 in reliance on this advice, which proved to be wrong. Elder asserted that CEI's representative, Johnie Long, the manager of the Fox Creek Project, fraudulently concealed the fact that the property did not have access to adequate sewage and that CEI continued to perform and bill for services on the project that Elder would not have authorized had it known the facts. Concerning the Sagefield project, Elder asserted claims for breach of contract and negligence. Elder alleged that CEI breached the contract by routinely over-billing for its services; that it refused to provide copies of plans; and that it threatened to halt performance of additional services unless it was paid. Elder also alleged that CEI negligently designed plans for the use of single-barrel elliptical pipe when the project required a two-barrel pipe.

In response to the complaint, CEI filed a motion to compel arbitration in keeping with the dispute resolution provision in the agreement. The trial court held a hearing on this issue on January 22, 2008, and it denied CEI's motion to compel arbitration of Elder's negligence and fraud claims but granted the motion to compel arbitration with respect to the breach-of-contract claims. The trial court allowed Elder thirty days to amend its complaint to assert claims with regard to the other projects.

On February 27, 2008, Elder filed an amended complaint that deleted all express reference to claims for breach of

Act, because the transactions did not involve interstate commerce. CEI does not challenge that decision in this appeal.

contract. In Count I of the amended complaint, Elder asserted that CEI violated the Arkansas Deceptive Trade Practices Act (ADTPA), found ⌊4at Arkansas Code Annotated sections 4–88–101 to –503 (Repl. 2001 & Supp.2007). In stating this claim, Elder alleged that CEI represented that it would provide services in a timely manner despite knowing that it was understaffed; that CEI failed to advise that Long would be responsible for the projects despite knowing that he was not a licensed engineer; that CEI grossly over-billed for its services on all projects except Fox Creek; that it threatened to cease work until disputed billings were paid; and that it refused to provide digital copies of plans unless Elder executed a release. Elder claimed that it was entitled to recover damages for the cost of delays occasioned by CEI's conduct and to recoup the cost of hiring other engineers to complete the projects. In Counts II and III, Elder reasserted its negligence and fraud claims against CEI with regard to the Fox Creek project. In Count IV, Elder restated its negligence claim with respect to the Sagefield project. In Count V, Elder claimed that CEI negligently created a drainage error and performed an incorrect survey of the Hidden Lake project. In Count VI, Elder alleged that CEI negligently drew plans of the Chester project depicting a water line in an incorrect location. And finally in Count VII, Elder asserted that CEI negligently advised that an eight-acre plot in the Avignon Court project was usable and that it negligently estimated the amount of fill dirt required for that project. All of the negligence counts alleged that CEI's actions caused a delay in finishing the projects and required Elder to hire other engineers to complete CEI's work.

The trial court conducted a second hearing to determine whether the claims asserted by Elder in the amended complaint were subject to arbitration. Applying the decision in ⌊5Terminix Int'l v. Stabbs, 326 Ark. 239, 930 S.W.2d 345 (1996), the trial court found that all of Elder's claims involved either negligence, fraud, or a violation of the ADTPA and were not subject to arbitration under Arkansas law. The court entered a written order to that effect on May 19, 2008. This timely appeal followed.

At the outset of this appeal, CEI concedes that Elder stated tort claims of negligence and fraud with regard to the Fox Creek project. CEI's argument on appeal, however, is that the other claims asserted by Elder, though disguised as tort claims, are in reality claims for breach of contract and that the trial court erred by not compelling arbitration as to these remaining claims.

We begin by noting that an order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.—Civil 2(a)(12) (2008); Showmethemoney Check Cashers, Inc. v. Williams, 342 Ark. 112, 27 S.W.3d 361 (2000). We review the trial court's order denying a motion to compel de novo on the record. Advance Am. Servicing of Ark., Inc. v. McGinnis, 375 Ark. 24, 289 S.W.3d 37 (2008). In a de novo review, we analyze the evidence and the law without giving deference to the trial court's rulings. Terminix Int'l Co. v. Trivitt, 104 Ark.App. 122, 289 S.W.3d 485 (2008).

We are also mindful that arbitration is strongly favored as a matter of public policy. Ruth R. Remmel Revocable Trust v. Regions Fin. Corp., 369 Ark. 392, 255 S.W.3d 453 (2007). Arbitration is also looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion. Carmody v. ⌊6Raymond James Fin. Servs., 373 Ark. 79, 281 S.W.3d

721 (2008). Notwithstanding this judicial endorsement of arbitration, Arkansas law prohibits the arbitration of tort matters. Ark.Code Ann. § 16–108–201(b)(2) (Repl. 2006). It is true that legitimate tort claims can arise out of contractual relationships. *Lehman Props. v. BB & B Constr. Co.*, 81 Ark.App. 104, 98 S.W.3d 470 (2003). However, Arkansas courts will not declare a matter nonarbitrable merely because of the manner in which a party chooses to characterize its action; instead, the claim must legitimately sound in tort. *Terminix Int'l v. Stabbs, supra; Lehman, supra.*

The supreme court has remarked that the difference between an action in contract and one in tort is not exact, but the basic distinction is that the purpose of the law of contract is to see that promises are performed, while the law of torts provides redress for various injuries. *Bankston v. Pulaski County Sch. Dist.*, 281 Ark. 476, 665 S.W.2d 859 (1984) (citing *Atkins Pickle Co., Inc. v. Burrough–Uerling–Brasuell Consulting Eng'rs, Inc.*, 275 Ark. 135, 628 S.W.2d 9 (1982)). Our task, on de novo review, is to determine the true character of Elder's causes of action. *See L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984).

In *L.L. Cole & Son, Inc.*, the supreme court observed that, generally speaking, a breach of contract is not treated as a tort if it merely consists of a failure to act (nonfeasance), as distinguished from an affirmatively wrongful act (misfeasance). In that case, the supreme court noted a tendency to extend tort liability for misfeasance whenever the misconduct involves a foreseeable and unreasonable risk of harm to the plaintiff's interest. In *Westark Specialties v. Stouffer Family Ltd.*, 310 Ark. 225, 836 S.W.2d 354 (1992), the supreme court applied this test and reached the conclusion that a tenant could bring a negligence action against a landlord who failed to maintain a sprinkler system where poor maintenance of the system caused flooding and resulting damage to the tenant's inventory. The court stated that water damage from a poorly maintained sprinkler system was obviously foreseeable and involved an unreasonable risk of harm. The court thus concluded that the tenant's claims sounded in tort, even though the requirement to maintain the facilities was noted in the parties' lease agreement.

Similarly, in *Terminix Int'l v. Stabbs, supra,* the supreme court analyzed the allegations of wrongful acts of misfeasance arising out of the performance of termite service and inspection agreements pertaining to a home that sustained considerable damage from a termite infestation. The court reasoned that a termite company's failure to properly inspect a residence and report the extent of damage involved a foreseeable and unreasonable risk of harm to potential buyers of the residence. In that case, the supreme court affirmed the trial court's denial of a motion to compel arbitration in finding that the true character of the claims sounded in tort, despite the fact that the cause of action grew out of a contractual relationship.

On facts closely resembling those in the case at bar, in *Lehman Props. v. BB & B Constr. Co., supra,* we reversed an order denying a motion to compel arbitration where the trial court found that the developer's claims against a construction company sounded in tort. The allegations in the complaint against the construction company included claims of false and misleading statements that were made with regard to such things as the location of streets and utilities, the timeliness of performance, the completeness and accuracy of plans and specifications, the terms of compensation, and the volume of materials present. The complaint also alleged that the construction company failed to locate

streets and utilities, failed to timely and correctly perform work, failed to make prompt payment, failed to complete accurate plans and specifications, and failed to estimate volumes of materials present. Upon our review, we looked beyond the developer's characterization of its claims and concluded that the claims did not legitimately sound in tort. We held that the true character of the claims was for breach of contract.

The supreme court has also pointed out that the damages prayed for are a factor in determining the true character of a claim. *Bankston v. Pulaski County Sch. Dist., supra.* In *Bankston,* the complaint alleged that the school district had installed a defective septic tank. Although the complaint mentioned that the defect permitted the leakage of sewage, the prayer for relief sought damages only for the cost of correcting the defect, not damages occasioned by the leak. Because the complaint sought enforcement of a promise and not the redress of injury, the supreme court determined that the true character of the cause of action was for breach of contract, not tort.

Guided by these authorities, we now consider each count of the amended complaint in the instant case to determine its true character. In Count I of the amended complaint, Elder alleges the violation of the ADTPA. Ordinarily, the responsibility for the civil enforcement of the ADTPA rests largely with the Attorney General. Ark.Code Ann. § 4–88–113(a)–(e) (Repl.2001); *Wallis v. Ford Motor Co.,* 362 Ark. 317, 208 S.W.3d 153 (2005). However, pursuant to subsection (f) of section 4–88–113, "[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chap-ter has a cause of action to recover actual damages, if appropriate." *See FMC Corp., Inc. v. Helton,* 360 Ark. 465, 202 S.W.3d 490 (2005). In order to state a claim for an unfair business practice, Elder was required to allege facts showing that CEI engaged in an unconscionable, false, or deceptive act or practice in business, commerce or trade. Ark.Code Ann. § 4–88–107(a)(10) (Supp.2007).

Here, Elder alleged that CEI falsely represented that it would perform services in a timely manner despite knowing that it was understaffed; that CEI failed to advise that Long would be responsible for the projects despite knowing that he was not a licensed engineer; that CEI provided unrealistic bids and grossly overcharged for its services; that CEI threatened to stop performance unless paid; and that CEI refused to provide digital copies of plans unless Elder signed a release. In its prayer for relief, Elder sought damages to recover the cost of excessive billing, the costs arising from delays, and the cost to hire other engineers to reproduce the work.

Although labeled as "deceptive" and "unconscionable," we are not persuaded that the alleged wrongs are of the type and character as to bring them within the purview of the ADTPA.[2] The claims of inadequate staffing and the use of unqualified personnel represent nothing more than Elder's dissatisfaction with how CEI set about to fulfill its obligations under the agreement and with the untimeliness of CEI's performance. In addition, the agreement provided that CEI retained ownership of the plans it created but that Elder was entitled to make and retain copies of the plans for its use. If, as

---

2. The parties in this case have proceeded under the assumption that any violation of the ADTPA is an action in tort. We confine our review to the parties' arguments and express no opinion on this matter.

alleged, CEI failed to provide copies of the plans, then it may have breached the contract. When the performance of a duty under a contract is contemplated, the nonperformance of that duty is most typically known as a breach. *Taylor v. George*, 92 Ark.App. 264, 212 S.W.3d 17 (2005). However, a breach of contract, in and of itself, is not tortious, even when it is alleged that the breach was motivated by malice. *See Quinn Cos., Inc. v. Herring–Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989). We also note that it has long been the law that a party may abandon further performance of a contract when the other party fails to pay for services rendered. *See Tech–Neeks, Inc. v. Francis*, 241 Ark. 390, 407 S.W.2d 938 (1966). With regard to the allegation that CEI over-billed for its services, we note that the contracts for each project contained fixed prices for certain services and provided that any additional services performed on the respective projects would be billed at an hourly rate in accordance with an attached schedule of charges. In alleging that it was grossly overcharged, Elder has merely tallied the fixed prices contained in each project and compared those sums to the actual amounts billed. Elder neglected, however, to take into consideration the charges for additional work and has not alleged that the additional charges were unreasonable. As such, Elder failed to allege sufficient facts to show that it was overcharged, much less grossly overcharged. Even accepting all the allegations in Count I as true, the claims made by Elder are nonetheless devoid of any factual bases on which we could conclude that CEI engaged in deceptive business practices. Accordingly, we have no choice other than to hold that the claims stated by Elder in Count I constitute ordinary breach-of-contract claims that do not rise to the level of violating the ADTPA. It is thus our con-

clusion the trial court erred by not compelling arbitration of these contract claims.

Moving to Count II of the amended complaint, Elder alleged that CEI negligently determined that there was adequate sewage for the Fox Creek project and that it purchased the property for $600,000 in reliance on this advice, which proved to be incorrect. Elder's claim for damages included the diminished value of the land and the sums it has expended and will expend on the failed project. As in *Westark Specialties, supra,* and *Stabbs, supra,* Elder's negligence claim involves misfeasance that caused injuries that were a foreseeable consequence of the alleged wrongful acts. Obviously, CEI's failure to accurately assess the availability of sewage access involved a foreseeable and unreasonable risk of harm to Elder's interests in developing the property as it had planned, so the true character of these claims sounds in tort. CEI's concession that the allegations of negligence represent legitimate tort claims is well taken, and we affirm the trial court's ruling denying arbitration of this claim.

In Count III, Elder alleged that CEI's representative fraudulently concealed the fact that the Fox Creek project did not have adequate access to sewage and that CEI continued to perform work and bill for services that Elder would not have authorized had it known that the project was in jeopardy. On this count, Elder sought to recover the cost of additional monies it expended in an effort to complete the project or the costs associated with finding other uses for the property. The elements of fraud are: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) in-

tent to induce action or inaction in reliance on the representation; (4) justifiable reliance on the misrepresentation; and (5) damage suffered as a result of the reliance. *Rice v. Ragsdale,* 104 Ark.App. 364, 292 S.W.3d 856 (2009). Elder clearly pled sufficient facts to state a claim for fraud. We acknowledge CEI's concession that this claim also sounds in tort, and we affirm the trial court's ruling denying arbitration of this claim.

In the remaining counts, Elder asserted various claims of negligence with regard to the other projects, including allegations that CEI negligently: drew plans for use of the wrong type of pipes; mislocated water lines; performed an incorrect survey; created a drainage error; miscalculated the amount of fill dirt needed; and advised that an eight-acre plot was usable. The damages claimed for these acts of alleged negligence included the cost of delay and the expense of hiring other engineers to complete the work.

As a general proposition, we agree with Elder that a plaintiff is the master of its complaint. However, as compared to the more factually specific allegations made with regard to the Fox Creek project, the claims of negligence regarding the other projects are vague and lacking in factual detail. As pled, absent are any specific details that would support a determination that the true character of these claims lies in tort, and we cannot conclude that these claims legitimately sound in tort. Unlike the plaintiffs in *Westark Specialties, supra,* and *Stabbs, supra,* Elder did not allege that any act of misfeasance resulted in any specific harm or injury. Elder sought only to recover the expenses occasioned by delays and the cost of hiring others to complete the work, which are classic contract damages. *See MDH Builders, Inc. v. Nabholz Constr. Corp.,* 70 Ark.App. 284, 17 S.W.3d 97 (2000). There-

fore, although Elder may have couched these claims in terms of generalized negligence, its prayer for damages reveals that the basic object of the claims was to obtain compensation for damages associated with a breach of contract, not for damages to redress any tortious injury. As did the supreme court in *Bankston v. Pulaski County Sch. Dist., supra,* we believe that the prayer for damages reveals the true character of these claims to be contractual, not tortious. *See also Lehman, supra.* Accordingly, we reverse the trial court's decision on this point as well.

In conclusion, we affirm the trial court's decision that Counts II and III are not subject to arbitration. We reverse and remand the remaining counts for the entry of an order compelling arbitration of these contract claims.

Affirmed in part; reversed and remanded in part.

PITTMAN and GLADWIN, JJ., agree.