SLIP OPINION

Cite as 2015 Ark. App. 316

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–14–593

| | |
|---|---|
| NASSER KHAIRI FILAT<br>APPELLANT<br><br>V.<br><br>JIM RAND; RAND PROPERTIES I,<br>LLC; SUBWAY REAL ESTATE<br>CORPORATION; DOCTORS<br>ASSOCIATES, INC.; AND FRANK<br>AND LISA GARDNER<br>APPELLEES | Opinion Delivered MAY 13, 2015<br><br>APPEAL FROM THE WHITE<br>COUNTY CIRCUIT COURT<br>[NO. CV–2011–805]<br><br>HONORABLE CRAIG HANNAH,<br>JUDGE<br><br>REVERSED AND REMANDED |

**DAVID M. GLOVER, Judge**

This case involves the installation of an air conditioner by a heat–and–air company hired by the sublessee, appellant Nasser Filat, in breach of the terms of his lease, on the seamless metal roof of property owned by appellees Jim Rand and Rand Properties I, LLC ("Rand"). Rand leased the property to Subway Real Estate Corporation & Doctors Associates, Inc. ("Subway") pursuant to a master lease, and those parties then subleased the property to Filat in October 2002.

Rand notified Subway in July 2009 that installation of the unit represented a breach of the master lease. Subway withheld $37,000[1] from Filat when Filat terminated his relationship with Subway in November 2009. The amount withheld was roughly based on

---

[1]Subway was released from the case after interpleading the $37,000.

an estimate Rand received as the cost to replace the roof because repair was not considered possible.

In December 2011, Filat brought a replevin, interpleader, and declaratory-judgment action against Rand and Subway, claiming that the funds withheld by Subway belonged to him. Rand counterclaimed against Filat, alleging negligence in the damage to the roof, and cross-claimed against Subway, alleging breach of contract. The heat-and-air company was not named as a party by anyone. Frank Gardner and Lisa Gardner were joined as necessary parties by order entered May 23, 2013, because they had subsequently subleased the premises where the air conditioner was located. Art Rand, Jim Rand's brother, was initially involved in the leased premises but was never named as a party because Jim acquired Art's ownership interest in the premises.

Filat asserted that any action against him by Rand was barred because the statute of limitations had begun to run when the unit was installed in March 2003 and had expired long before suit was filed. Rand, on the other hand, contended that the statute of limitations on the tort action against Filat did not begin to accrue until Rand knew or by the exercise of reasonable diligence should have discovered the cause of injury, and he did not know, nor could he have reasonably known, about the roof damage until 2009. Filat moved for summary judgment, which was denied, and the case went to a bench trial, where Rand was awarded $36,000 of the amount held in escrow, and Filat was awarded the remaining $1,000.

Filat appeals, contending that the trial court erred in holding that the case was not barred by the statute of limitations because it sounded in tort, rather than in contract. He

further contends that, even if Rand's claim sounded in tort, the trial court erred in applying the "discovery rule" to toll the running of the statute. We hold that this action sounded in contract and that it was barred by the applicable five-year statute of limitations. We therefore reverse and remand for further proceedings consistent with this opinion.

*Background*

The master lease between Subway and Rand provides in pertinent part: "No alterations or improvements affecting the structural portion of the premises shall be made by Tenant without the *written* consent of the Landlord." (Emphasis added.) The Master Lease also provided:

> Tenant shall pay and settle all expenses and liabilities arising out of or in any way connected with any and all construction, repairs, alterations or maintenance of the Premises, and all liens of mechanic's and materialmen and all liens of a similar character arising out of or growing out of the construction, repair, alteration or maintenance of the Premises, provided said work was performed by Tenant.

The sublease between Subway and Filat provides in pertinent part: "The Sublessee (Filat) agrees to perform and observe all of the obligations of the Sublessor (Subway) under the Master Lease . . . ." A copy of the Master Lease was "annexed" to the Sublease.

Filat employed a local heat-and-air company to address a cooling problem in the leased premises. The owner of the heat-and-air company, Mr. Wilburn Addington, testified that the leased premises had never had adequate air conditioning; that it was hot in the customer area; that "there was no way of getting the air-conditioning where they wanted it," and that he was the one who "suggested a rooftop unit." He testified he sealed the unit once he installed it on the roof; he did a "good job"; he did not conceal the unit or try to hide it;

he was never instructed to obscure it from the view of onlookers; he completed the job by March 5, 2003; he billed Filat because he thought Filat owned the property; Filat was the one who paid him for the work; and he (Addington) never talked to or heard from Jim or Art Rand.

Addington explained that he had to cut two holes in the roof to install the unit; that he was not aware the roof was one seamless piece of metal with a lifetime guarantee when he cut through it; and that he did not know cutting through a one-piece roof would destroy the roof's integrity. He said it was common for him to install units on the roof of a business and he took steps to make sure the unit was sealed tightly with no leaks. He also stated he was not aware that exterior repairs were prohibited under the terms of the lease without the written consent of the owner.

Filat testified he was receiving numerous complaints from customers about heating and cooling; he thought it was hurting his business; he called Art Rand prior to calling the heat-and-air company and asked if he would help put air in the dining room; Art told him he would not take care of the problem but Filat could do it himself; Art had no problem with it at all and did not give him any restrictions on where it could be located; he (Filat) then called Addington to address the problem; it was Addington who suggested putting the unit on the roof; Filat did not ask him to hide it in any fashion; anyone entering the front door of the business would be able to see the air-conditioning vent inside; the vent was never obscured; that on one occasion, about a year after the installation, there was a leak regarding the air-conditioner vent; and he called Addington, who came out and fixed it.

SLIP OPINION

Filat testified he sold the business in 2009; from the first leak in 2004 until 2009, there were no other leaks and he was not aware of any leaks after that time either; he did not bill Art Rand for anything connected with the air-conditioner installation or the leak repairs; and he became aware of a problem with the installation when he was approached by Jim Rand when he sold the business in 2009. Filat stated Art visited the property after the installation and was "ecstatic," saying that "it looked nice." Art denied any such knowledge when he testified. It is undisputed that, regardless of whether oral consent was given, no written consent was obtained, which breached the terms of the lease.

*Discussion*

In its findings of fact and conclusions of law, the trial court explained:

> 17. Filat had a duty to properly follow the terms of the contract and not make exterior repairs without the written consent of Rand. Furthermore, Filat is responsible for any expenses and liabilities arising out of or in any way connected with any and all construction, repairs, alterations or maintenance caused by Filat. Filat breached this obligation and attempts to avoid this responsibility which arises under the contracts (Master Lease and Sublease). His breach of this duty is a tortious act that resulted in Filat damaging the roof at the Premises. The integrity of the roof is destroyed. Rand did not know nor should he reasonably have known of the damage to the roof until 2009. His counterclaim was filed in December of 2011.

Filat contends the trial court erred in concluding that his breach of the contract constituted a tortious act. We agree.

In *Westark Specialties, Inc. v. Stouffer Family Ltd., P'ship*, 310 Ark. 225, 232–33, 836 S.W.2d 354, 357–58 (1992), our supreme court explained:

> Westark also argues that our decision in *Quinn Companies, Inc., v. Herring-Marathon Group, Inc.*, 299 Ark. 431, 773 S.W.2d 94 (1989), requires that a plaintiff not transform a breach of contract action into a tort action. That only partially states the holding of the case. We stated, "if the facts warrant, a party to a contract may sue on

an independent tort claim. But a plaintiff may not transform a breach of contract action into a tort claim by alleging the breach was motivated by malice. The breach itself simply is not a tort."

The distinguishing characteristic which transforms a breach into a tort was defined in *L.L. Cole & Sons, Inc. v. Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984) where we said:

> Generally, a breach of contract is not treated as a tort if it consists merely of a failure to act (nonfeasance) as distinguishable from an affirmatively wrongful act (misfeasance). [citations omitted] The courts, however, have tended to extend the tort liability for misfeasance whenever the misconduct involves a foreseeable, unreasonable risk of harm to the plaintiff's interests.

> Westark argues in a parenthetical fashion that there were no allegations of foreseeability or unreasonable risk of harm and that Automotive did not prove foreseeability. There is no requirement that a party plead foreseeability in a complaint, and water damage from a poorly maintained sprinkler system is obviously foreseeable. The jury clearly found the evidence sufficient to support the showing of breach of the duty to maintain the system. There is no error in the case proceeding on a tort theory.

*See also Farm Bureau Ins. Co. v. Running M Farms, Inc.*, 366 Ark. 480, 237 S.W.3d 32 (2006);

*CEI Eng. Assoc., Inc. v. Elder Constr. Co.*, 2009 Ark. App. 259, 306 S.W.3d 447.

Filat did not get written permission to have the new air-conditioning unit installed on the roof, and in failing to do so he breached the terms of his lease. However, the "tortious conduct" Filat was supposed to have engaged in was never well defined by Rand or by the court, and we are not convinced that it should have been foreseeable to Filat that a roof-top installation was improper or that it would create an unreasonable risk of harm to Rand's property. He did not undertake the task of installation himself. He hired Addington, a heat-and-air specialist. Moreover, Filat did not even suggest positioning the unit on the roof; rather, he took Addington's advice to do so. We conclude that the distinguishing

characteristic that transforms a breach into a tort is missing under the facts of this case, and the trial court erred in concluding otherwise.

The statute of limitations for a breach of contract is five years. Ark. Code Ann. § 16-56-111 (Repl. 2005). The air-conditioner installation, undertaken without written consent in violation of the terms of the lease, was completed by March 5, 2003. The limitations period ended on March 5, 2008, which expired before this case began. The trial court erred in concluding that the action was not barred by the applicable statute of limitations for contract breaches.

Because we have concluded the trial court erred in treating this action as a tort rather than a contract breach, it is not necessary to address Filat's remaining point of appeal. The "discovery rule" does not apply to breach of contract actions.

Reversed and remanded.

KINARD and HIXSON, JJ., agree.

*The Henry Firm, P.A.*, by: *Matthew Henry*, for appellant.

*Simpson, Simpson & Mercer*, by: *James A. Simpson, Jr.*, for appellee.