A.G. EDWARDS & SONS, INC., Stanley Zunick, Jr.  *v.*
Richard Dale MYRICK

CA 03-1344                                          195 S.W.3d 388

Court of Appeals of Arkansas
Opinion delivered October 13, 2004

*Lax, Vaughn, Fortson, McKenzie & Rowe, P.A.*, by: *Roger D. Rowe*, for appellant.

*The Wright Law Firm*, by: *K. Leanne Daniel*, for appellee.

SAM BIRD, Judge. A.G. Edwards & Sons, Inc. (Edwards), and Stanley Zunick, Jr. (Zunick), appeal from an order of the Garland County Circuit Court denying their motion to arbitrate appellee Richard Myrick's claims against them. The primary issue on appeal is whether appellee's agreement to arbitrate "any controversy" with Edwards, which was contained within a 1986 customer's agreement signed by appellee and his former wife, Kathryn Myrick, in reference to a joint account, applied to a dispute involving three custodial accounts that appellee opened for his daughters in 1995. We hold that it did apply and that the trial court erred in denying appellants' motion for arbitration.

In 1986, in conjunction with the opening of a joint account with Edwards, the Myricks signed a customer agreement that began with the following statement:

> In consideration of A.G. Edwards & Sons, Inc., or any successor thereof (hereinafter referred to as "Edwards") accepting one or more accounts of the undersigned (whether designated by name, number or otherwise) for the purchase, sale or carrying of securities, commodities and options, or contracts relating thereto, and other property (hereinafter collectively referred to as property), the undersigned agrees as follows:

In Paragraph 14, the agreement stated that it would cover "individually and collectively all accounts which the undersigned may at any time maintain with Edwards" and that it would "continue in effect until written notice of revocation is received by the Director of Operations of Edwards from the undersigned."

The agreement also contained the following arbitration provision, which provided in relevant part:

> The following agreement to arbitrate may not apply to any controversy or claim or issue in any controversy with a public customer for which a remedy may exist pursuant to a right of action under the federal securities laws, or to any controversy with a public customer involving transactions in commodity futures contracts or options thereon unless agreed to by the undersigned in a separate endorsement:
>
> ANY CONTROVERSY BETWEEN THE UNDERSIGNED AND EDWARDS OR ANY OF EDWARDS' OFFICERS, DIRECTORS, AGENTS OR EMPLOYEES ARISING OUT OF THIS AGREEMENT OR THE PERFORMANCE OR BREACH OF THIS AGREEMENT, OR ANY ACCOUNT WITH EDWARDS, OR ANY TRANSACTION BY THE UNDERSIGNED WITH OR THROUGH EDWARDS, OR ANY OTHER CAUSE WHATSOEVER, SHALL BE SETTLED BY ARBITRATION IN ACCORDANCE WITH THE APPLICABLE STATE OR FEDERAL ARBITRATION STATUTES and in accordance with the rules of The American Arbitration Association, the National Association of Securities Dealers, Inc., or such securities exchange as the undersigned may elect. . . . The award of any arbitrators appointed pursuant hereto shall be final, and judgment upon the award rendered may be entered in any court having jurisdiction.

In 1995, appellee opened custodial accounts for the parties' three children, using funds from the Myricks' joint account. Zunick was the investment broker who opened these accounts. Appellee did not sign a new customer's agreement. The Myricks were subsequently involved in a contentious divorce, and Kathryn was awarded custody of their children. Although the litigation continued, the couple was divorced in late 1997. In 1998, appellee asked Edwards to transfer the three custodial accounts from its Hot Springs, Arkansas branch to its Gulfport, Mississippi branch. After Edwards did so, appellee withdrew the balances from the three

custodial accounts and allegedly deposited those funds into one of his mother's accounts. In February 2001, in the divorce case, Kathryn served a subpoena on Edwards's home office in St. Louis, Missouri, requesting all documents relating to the custodial accounts in its possession. Edwards produced the requested documents. In April 2001, Kathryn sued appellee and his mother for restitution and an accounting. Zunick also provided an affidavit concerning the custodial accounts.

In April 2003, appellee filed a counterclaim naming Kathryn, Edwards, and Zunick as defendants. Requesting damages in the amount of $10,000,000, he alleged invasion of privacy, violation of federal privacy law, breach of fiduciary duty, abuse of process, and violation of the Arkansas Civil Rights Act in Edwards's and Zunick's release of information to Kathryn. Edwards and Zunick moved to compel arbitration. They relied upon the 1986 arbitration provision quoted above and alleged that, because interstate commerce was involved, the Federal Arbitration Act applied. After a hearing, the circuit court entered an order denying the motion to compel arbitration. This appeal followed.

■ Our review of a trial court's denial of a motion to compel arbitration, which is available as a permissible interlocutory appeal, is *de novo*. *IGF Ins. Co. v. Hat Creek P'ship*, 349 Ark. 133, 76 S.W.3d 859 (2002); *Walton v. Lewis*, 337 Ark. 45, 987 S.W.2d 262 (1999).

■ On appeal, appellants assert, and it is undisputed by appellee, that the Federal Arbitration Act (FAA) applies to this case. The FAA provides that a written provision in a contract evidencing a transaction involving commerce to arbitrate a controversy arising out of that contract is valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). The FAA, instead of the Arkansas Uniform Arbitration Act, applies when the underlying dispute involves interstate commerce. *Walton v. Lewis, supra.* Section 1 of the FAA defines "commerce" as "commerce among the several States. . . ." 9 U.S.C. § 1 (2000). State and federal courts have concurrent jurisdiction to enforce an arbitration agreement pursuant to the terms of the FAA. *Walton v. Lewis, supra.*

Appellants contend that the arbitration provision in the 1986 agreement was so broad that it covered any controversy and all claims relating to all of appellee's accounts with Edwards, regardless of when they were opened. They point out that the customer's

agreement was not limited to a particular account or to accounts opened by appellee in any particular capacity. In response, appellee notes that the account cards created by Edwards in 1995 for the custodial accounts did not reflect that those accounts were subject to arbitration and did not refer to the 1986 agreement; that the "customer agreement" boxes were not checked on the 1995 account cards; and that he signed the 1986 agreement as an individual and opened the 1995 accounts as a custodian. Appellee, however, did not sign the account cards maintained by Edwards for the custodial accounts; in this case, there is only one contract to construe — the 1986 customer's agreement.

■■ Because the duty to arbitrate is a contractual obligation, we must first determine from the language of the arbitration agreement whether the parties intended to arbitrate the particular dispute in question. *Walton v. Lewis, supra.* In addressing whether a party has entered into an agreement to arbitrate under the FAA, courts are to apply general state law principles, giving due regard to the federal policy favoring arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.,* 489 U.S. 468 (1989). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. *Neosho Constr. Co. v. Weaver-Bailey Contractors,* 69 Ark. App. 137, 10 S.W.3d 463 (2000). A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction. *Fryer v. Boyett,* 64 Ark. App. 7, 978 S.W.2d 304 (1998). When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.*

■ We believe that the arbitration agreement is unambiguous and that it required the arbitration of any controversy between appellants and appellee arising from *any* account with Edwards. The agreement expressly stated that it was made in consideration of Edwards's accepting "one or more accounts" of appellee, and its scope was broad and expansive, covering "any controversy" between the parties "arising out of this agreement or the performance or breach of this agreement, or any account with Edwards, or any transaction" by appellee with Edwards, "or any other cause whatsoever. . . ." The agreement did not limit its application to accounts that appellee opened in any particular

capacity or to accounts then in existence. Also, the parties did not later create any document that expressly or by implication excepted the custodial accounts from the terms of the arbitration agreement, nor did they revoke the 1986 agreement. We therefore conclude that the parties had a valid arbitration agreement that included appellee's claims against appellants and that the circuit court erred in refusing to compel arbitration.

Reversed and Remanded.

HART and BAKER, JJ., agree.