TERMINIX INTERNATIONAL CO., LLC, Terminix
International Co., LP, Employer's Unity, Inc., Service Master
Terminix International Co., LP, Mike Steed, and Larry Pruitt  *v.*
Mandy TRIVITT and Josh Trivitt

CA 08-233                                              289 S.W.3d 485

Court of Appeals of Arkansas
Opinion delivered December 10, 2008

*Marshall & Owens, A Professional Association,* by: *W. Lance Owens*; and *Weintraub, Stock & Grisham, P.C.,* by: *James H. Stock, Jr.,* for appellants.

*Stewart K. Lambert,* for appellees.

SARAH J. HEFFLEY, Judge. Appellants Terminix International Company and others (Terminix) bring this appeal from an order denying their motion to compel arbitration of tort claims brought against them by appellees Mandy Trivitt, a former Terminix employee, and Josh Trivitt, her husband. For reversal, Terminix argues that the trial court erred in ruling that the question of arbitration was controlled by the Arkansas Uniform Arbitration Act (AUAA) rather than the Federal Arbitration Act (FAA). We find merit in this argument and reverse and remand.

On November 18, 2004, Ms. Trivitt filed suit against Terminix asserting claims of defamation and outrage and seeking both compensatory and punitive damages. Trivitt's husband, Josh, joined in the complaint to assert a loss of consortium. As the factual predicate for these claims, Trivitt alleged that she held the position of Office Supervisor at Terminix's local office in Sharp County when in November of 2003 Mike Steed, the district manager, accused her of stealing office monies. Trivitt maintained that Steed communicated the accusation to persons in the local office and others in the regional office, both verbally and in writing. She alleged that Steed later suspended her and ultimately fired her based on the theft of office monies. Trivitt further alleged that the accusation was false and that no evidence was ever produced proving that she stole any money. She added that Terminix filed a police report that resulted in no charges being brought against her.

Terminix responded with a motion to compel arbitration in accordance with the terms of an employment agreement and arbitration agreement entered into by the parties. Terminix attached both agreements, which were signed by Trivitt in November 2001, as an exhibit to the motion. The employment agreement contained the following provision:

Agreement to Mediate and Arbitrate. The Employer and Employee agree that, to the fullest extent permitted by law, any and all disputes will be submitted to mediation upon terms mutually agreeable to both parties. In the event the parties do not resolve such controversies through mediation, then the Employer and Employee agree that, to the fullest extent permitted by law, any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference. The parties understand and agree that in the event mediation is unsuccessful, then arbitration will be the exclusive forum for resolving disputes arising out of the employment relationship and the termination of such relationship. The Employee and Employer expressly waive their entitlement, if any, to have controversies between them decided by a court or jury.

The arbitration agreement provided in pertinent part:

Arbitrable Claims. The parties understand that, except as otherwise provided by law, this Agreement applies to all claims, including, but by no means limited to, claims for breaches of contract (express or implied), discrimination, torts, and/or claims based upon any federal, state, or local ordinance, statute, regulation, constitutional provision, or any other law.

Governing Law. This Agreement will be governed and construed in accordance with the Federal Arbitration Act.

Terminix also included the affidavit of Bill Young, its vice president of human resources. He asserted that Terminix is a national termite and pest control company engaged in interstate commerce with branch offices throughout the United States, including the State of Arkansas. He stated that the corporate office is located in Memphis, Tennessee, and that payroll checks for employees were issued from the corporate office and that employee benefits were also administered through that office. He also averred that its service technicians apply chemicals and other products that come from outside the State of Arkansas.

In its brief and at the hearing, Terminix argued that the FAA applied because the parties chose it as the governing law in the agreement and because of the interstate character of its business. Trivitt argued primarily that the AUAA applied and that Arkansas

law prohibits arbitration of tort matters and employer-employee disputes, as reflected by Ark. Code Ann. § 16-108-201(b)(2) (Repl. 2006). The trial court denied the motion to compel, ruling that the AUAA was the controlling law and thus Trivitt's tort claims of defamation and outrage were not arbitrable. Terminix appeals this determination, contending that the trial court erred by not applying the FAA to compel arbitration.

At the outset we note that an order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civil 2(a)(12). We review the trial court's order denying a motion to compel de novo on the record. *Advance America Servicing of Arkansas, Inc. v. McGinnis*, 375 Ark. 24, 289 S.W.3d 37 (2008). In a de novo review, we review the evidence and the law without deference to the trial court's rulings. *Wyatt v. Giles*, 95 Ark. App. 204, 235 S.W.3d 522 (2006).

We observe that Congress enacted the FAA in 1925 as a response to hostility of American courts to enforce arbitration agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. With the enactment of section 2, Congress declared a national policy favoring arbitration and withdrew the power of states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration. *Southland Corp. v. Keating*, 465 U.S. 1 (1984). The Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration. *Preston v. Ferrer*, 128 S. Ct. 978, 169 L.Ed.2d 917 (2008). The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. *Volt Information Sciences, Inc. v. Leland Stanford Junior University*, 489 U.S.

468 (1989). To this end, the Supreme Court recognizes that parties are generally free to structure their arbitration agreements as they see fit. *Id.*

Arbitration is a matter of contract between parties. *Lehman Properties v. BB & B Construction Co.*, 81 Ark. App. 104, 98 S.W.3d 470 (2003). In addressing whether a party has entered into an agreement to arbitrate under the FAA, courts are to apply state-law principles, giving due regard to the federal policy favoring arbitration. *A.G. Edwards & Sons, Inc. v. Myrick*, 88 Ark. App. 125, 195 S.W.3d 388 (2004). The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally, thus we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007).

█ The arbitration agreement at issue plainly states that it is to be governed under the FAA and not Arkansas law. We have held that, where the parties designate in the arbitration agreement which arbitration statute they wish to have control, the court should apply their choice. *Pest Management, Inc. v. Langer*, 96 Ark. App. 220, 240 S.W.3d 149 (2006).[1] As in our decision in *Langer*, we hold that the trial court erred by not honoring the parties' choice-of-law provision in the agreement.

█ Even without the choice-of-law provision, we would still hold that the FAA applies to the arbitration agreement. The FAA applies to contracts evidencing a transaction "involving commerce." The Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) (citing *Allied-Bruce Terminix Companies v. Dobson*, 513

---

[1] In *Pest Management, Inc. v. Langer*, 369 Ark. 52, 250 S.W.3d 550 (2007), the supreme court upheld our decision that the FAA applied on a related ground without expressing an opinion on our conclusion concerning the choice-of-law provision in the contract.

U.S. 265 (1995)). In *Allied-Bruce,* the Supreme Court read the FAA's language "as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce,* 513 U.S. at 281. Based in part on the *Allied-Bruce* interpretation of the term "involving commerce" as an expression of Congressional intent to regulate to the full extent of its commerce powers, the Court has held that employment contracts, except those of transportation workers, come within the purview of the FAA. *Circuit City Stores, Inc. v. Adams, supra.*

Here, there is no dispute that the contract involved interstate commerce. In fact, Trivitt has chosen to ignore this aspect of the case in her brief, and she does not deny the interstate character of Terminix's business. Based on Bill Young's affidavit, the record shows that Terminix is a national concern that engages in interstate commerce. The chemicals and products used by its service technicians are shipped across state lines. Its headquarters are in Memphis, and it has branch offices throughout the United States. Trivitt was employed as an office supervisor at its branch in Sharp County. Her payroll checks were processed and issued out of the corporate office in Memphis, and her employee benefits were administered from the Memphis office as well. The connection with interstate commerce is evident. *See, e.g., Baer v. Terminix International Co.,* 975 F.Supp. 1272 (D. Kan. 1997).

The next question we decide is whether this dispute falls within the terms of the arbitration agreement. The FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1 (1983). It is generally held that arbitration agreements will not be construed within the strict letter of the agreement but will include subjects within the spirit of the agreement. *E-Z Cash Advance, Inc. v. Harris, supra.* Here, the employment agreement mandates binding arbitration in accordance with the arbitration agreement, providing that "arbitration will be the exclusive forum for resolving disputes arising out of the employment relationship and the termination of such relationship." The arbitration agreement provides that arbitrable claims include "all claims, including, but by no means limited to, claims for . . . torts . . . ." Trivitt's complaint is grounded in the torts of defamation and outrage based on alleged mistreatment that she endured while

employed at Terminix. These tort claims thus grew out of the employment relationship and are subject to arbitration according to the terms of the agreement.

In conclusion, the FAA is controlling in this case because the parties chose it to be the governing law and because of the connection with interstate commerce. Although the claims would not be arbitrable under Arkansas law, the FAA preempts state laws that require a judicial forum for the resolution of claims that the contracting parties agree to resolve by arbitration. *Allied-Bruce Terminix Co. v. Dobson, supra; Volt Information Sciences, Inc. v. Leland Stanford Junior University, supra; Southland Corp. v. Keating, supra. See also Lehman Properties v. BB & B Construction Co., supra* (holding that the FAA applies, not the AUAA, when interstate commerce is involved). Because the trial court applied the AUAA instead of the FAA, we reverse and remand for proceedings consistent with this opinion.

We note that Terminix makes the argument that Josh Trivitt's claim for loss of consortium is also subject to arbitration. The trial court did not rule on this matter, so we decline to address it. *IGF Ins. Co. v. Hat Creek Partnership*, 349 Ark. 133, 76 S.W.3d 859 (2002).

Reversed and remanded.

PITTMAN, C.J., and BIRD, GLOVER, MARSHALL, and HUNT, JJ., agree.

HART, GLADWIN, and BAKER, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. This case is like an onion — the issues have several layers. I submit that one's conclusion to either affirm or reverse depends on how deeply you probe these layers. If you stop at the thin, brittle outer shell, i.e., analyze the case superficially, you will conclude that the trial judge erred and it should be reversed. However, if you delve deeper into the issues, and acquire a better understanding of the law and facts, you will inevitably conclude that the trial court's finding that the Arkansas Uniform Arbitration Act (AUAA), not the Federal Arbitration Act (FAA), was the governing law in this case and its decision not to compel arbitration should be affirmed.

I find no merit in Terminix's argument that, because the parties agreed to apply the FAA as the governing law in the arbitration agreement, the circuit court erred as a matter of law in

denying the motion to compel arbitration. I am mindful that it is settled law that arbitration is a matter of contract between the parties, and the same rules of construction and interpretation apply to arbitration clauses as apply to agreements generally. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001). The construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law, and we must give effect to the parties' intent as evidenced by the arbitration agreement itself. *Id.* I am also aware that our supreme court has stated that in light of the policy favoring arbitration, such agreements will not be construed strictly but will be read to include subjects within the spirit of the parties' agreement and that any doubts and ambiguities of coverage will be resolved in favor of arbitration. *Id.*

The agreement to arbitrate, however, is merely the starting point. It appears in a provision styled "Agreement to Mediate and Arbitrate," which is paragraph 5 of the Employment Agreement. It states:

> The Employer and Employee agree that, to the fullest extent permitted by law, any and all disputes between them will be submitted to mediation upon terms mutually agreeable to both parties. In the event the parties do not resolve such controversies through mediation, Employer and Employee agree that, to the fullest extent permitted by law, any and all controversies between them will be submitted for resolution to binding arbitration in accordance with the attached Arbitration Agreement, which is incorporated herein by reference. The parties understand and agree that in the event that mediation is unsuccessful, then arbitration will be the exclusive forum for resolving disputes between them, including statutory claims and all disputes arising out of the employment relationship and the termination of such relationship. The Employee and Employer expressly waive their entitlement, if any, to have controversies between them decided by a court or jury. The attached Arbitration Agreement is incorporated herein.

The first rule of construction requires that the court read the words as written and give them their plain and ordinary meaning. *Coleman v. Regions Bank*, 364 Ark. 59, 216 S.W.3d 569 (2005). Accordingly, while the agreement to submit to alternative dispute resolution is obviously quite broad, it is limited by the phrase "to the fullest extent permitted by law." This phrase is of paramount importance in this case because the AUAA has an express provision proscribing arbitration of tort claims. Ark. Code Ann. § 16-108-201(b)(2) (Repl. 2006).

The courts of this state will not enforce contracts that violate our statutes. *See, e.g., Williams v. Johnson Custom Homes*, 374 Ark. 457, 288 S.W.3d 607 (2008) (declaring void and unenforceable a choice of law provision in an employment contract where an Arkansas worker agreed to be bound by the Workers' Compensation laws of the state of Ohio).

Terminix favors the application of the FAA in this case because the FAA has no express provision that proscribes the arbitration of tort claims. I am mindful that the parties have apparently made a choice-of-law agreement in the appended Arbitration Agreement. It states, "Governing Law. This Agreement will be governed and construed in accordance with the Federal Arbitration Act." However, as in *Williams v. Johnson Custom Homes*, that should not end our analysis.

First, because our legislature unequivocally declared in the AUAA that tort claims are not subject to arbitration, this fact would support a holding that the offending portion of the Terminix employment contract is void and unenforceable. But even without this court declaring the contract provision void, this would not mean that the trial court erred because the facts and circumstances of this case fail to establish that the FAA applies, notwithstanding the agreement.

The FAA expressly states that for an arbitration agreement to be valid and enforceable, it must be "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." These are clear words of limitation. Put in the context of this case, at issue are the torts of outrage and defamation. In *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980), the supreme court first recognized the tort of outrage or intentional infliction of emotional distress and defined it as extreme and outrageous conduct, meaning conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." I simply cannot accept that such conduct can properly be considered to have arisen from an employment contract.

Moreover, the FAA also requires that the contract be one "involving commerce." Amazingly, Terminix asserts that the "transaction involving commerce" was the interstate communication of the alleged defamatory statements. I cannot accept the

notion that defamation is commerce. Hitherto, I thought it was axiomatic that appellants are bound by the scope and substance of their arguments. I lament that the majority now has either over-ruled this practice *sub silentio* or held that defamation can be interstate commerce. I would hold that while the parties have ostensibly made a choice of law, the law (FAA) has not chosen them.

Even assuming that the AUAA did not bar arbitration, I would likewise hold that the parties' ostensible agreement to arbitrate "torts" is of no effect. By compelling arbitration, Terminix was in effect limiting its financial exposure in a tort case. While an award of punitive damages is not precluded by the FAA, *see Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), such an award would be left to the discretion of the arbitrator to consider. Conversely, if any evidence supporting an award of punitive damages was presented in a jury trial, the jury *must* be instructed to consider an award of punitive damages. *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992).

As a general rule, exculpatory clauses in contracts are disfa-vored. *Plant v. Wilbur*, 345 Ark. 487, 47 S.W.3d 889 (2001). Setting aside the fact that exculpatory clauses have only been approved in this state to limit a party's exposure to liability for ordinary negligence and not intentional torts, these clauses will only be enforced (1) when the party is knowledgeable of the potential liability that is released; (2) when the party is benefitting from the activity which may lead to the potential liability that is released; and (3) when the contract that contains the clause was fairly entered into. *Finagin v. Arkansas Development Fin. Auth.*, 355 Ark. 440, 139 S.W.3d 797 (2003). The so-called agreement to arbitrate torts in this case clearly fails to satisfy the knowledge factor because it does not explicitly state the type of torts that would be subject to arbitration. "Torts" could involve any con-duct from spilling water on the floor to shooting one's co-workers. The "fairly entered into" factor also fails to pass muster because the agreement in question was strictly a contract of adhesion.

I also find no merit in Terminix's other arguments. I would reject its contention that public policy favors arbitration, that non-signatories to the arbitration agreement — in this case Josh — are likewise bound to arbitrate, and that the FAA preempts state law.

I am mindful that our supreme court has stated that, as a matter of public policy, arbitration is strongly favored in Arkansas.

*See, e.g., Ruth R. Remmel Revocable Trust, Inc. v. Regions Fin. Corp.,* 369 Ark. 392, 255 S.W.3d 453 (2007); *Pest Mgmt. v. Langer,* 369 Ark. 52, 250 S.W.3d 550 (2007). Further, it has also been said that ambiguities must be resolved in favor of arbitration. *Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 147 S.W.3d 681 (2004). However, upon analyzing these pronouncements, I am unconvinced that they reach as far as Terminix would like us to believe. Significantly, the supreme court stated that it favored arbitration because arbitration is considered a "less expensive and more expeditious means of settling litigation and relieving docket congestion." *Cash In A Flash Check Advance v. Spencer,* 348 Ark. 459, 74 S.W.3d 600 (2002). Here, there is no indication that either goal is likely to be achieved in this case. Both parties are represented by counsel and have engaged in discovery, as due diligence would require. Although less formal than a judicial setting, both sides would be required to present there case to an arbitrator, so there is apparently no significant savings to be had here in terms of the expense of putting on the case. Likewise there is nothing in the record to suggest that relieving "docket congestion" is a pressing need.

Perhaps more significantly, while the supreme court has expressed its approval of arbitration, it has also repeatedly held that the determination of public policy lies almost exclusively with the legislature, and the courts will not interfere with that determination in the absence of palpable errors. *See, e.g., Jordan v. Atlantic Cas. Ins. Co.,* 344 Ark. 81, 40 S.W.3d 254 (2001); *Norton v. Hinson,* 337 Ark. 487, 989 S.W.2d 535 (1999); *McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9 (1999). I cannot ignore that the legislature has clearly declared in the AUAA that tort cases shall not be submitted to arbitration.

While I can at least appreciate the validity of both sides of many of the issues that I have discussed, I find it simply untenable to hold that non-signatories to the arbitration agreement — in this case Josh — must likewise be bound to arbitrate. The majority dodges this point, asserting that it need not open this can of worms because the trial court did not rule on it. This procedural bar is disingenuous in the extreme. The trial court ruled that neither Mandy nor Josh was bound to arbitrate. Our review in this case is de novo on the record. *Sterne, Agee & Leach, Inc. v. Way,* 101 Ark. App. 23, 270 S.W.3d 369 (2007). We owe it to the litigants to decide the issues that are already before us and not create piecemeal appeals.

Finally, I cannot agree with Terminix's blanket contention that the FAA preempts state law. I submit that the majority has ignored our supreme court's decision in *Arkansas Diagnostic Center, P.A. v. Tahiri*, 370 Ark. 157, 257 S.W.3d 884 (2007), where it seems to have squarely rejected this contention.

I respectfully dissent.

BAKER, J., joins.

R OBERT J. GLADWIN, Judge, dissenting. While I agree with Judge Hart that this case should be affirmed, I reject the insinuation that the majority analyzed this case superficially. This was a complicated and close case. The mere fact that I disagree with the majority does not mean that its opinion is not well reasoned and thorough. It is.

Further, I do not believe that the majority has overruled the requirement that an appellant is bound by his arguments below. I simply do not read that into the majority opinion.