2010 Ark. 151

**GRUMA CORPORATION, Appellant,**

v.

**Norman Kenneth MORRISON, Appellee.**

**No. 09–618.**

Supreme Court of Arkansas.

April 1, 2010.

Newell & Hargraves, by: C. Burt Newell, Hot Springs, and Thompson & Knight LLP, by: Nicole L. Williams and Timothy L. Evans, Dallas, for appellant.

Andi Davis Law Firm, by: Andi Davis, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This appeal arises out of a food product distribution contract containing an arbitration clause entered into by appellant Gruma Corporation (Gruma) and appellee Morrison. We accepted certification of this case from the court of appeals because it involves an issue of first impression, substantial public interest, and a substantial question of law concerning the interpretation of the Arkansas Franchise Practices Act (AFPA), codified at Ark.Code Ann. §§ 4–72–201 to –210 (Repl.2001). See Ark. Sup.Ct. R. 1–2(b)(1), (4), and (6). Gruma asserts that the circuit court erred in denying its motion to dismiss based on that court's determination that the arbitra-

tion agreement did not apply to Morrison's claims under the AFPA. We agree and reverse the circuit court.

Gruma—a Nevada corporation with a principal place of business in Dallas, Texas—and Morrison entered into a contract entitled the "Store Door Distribution Agreement" (SDDA) on November 16, 2006. Under the terms of the SDDA, Morrison became Gruma's |₂"exclusive store door sales distributor for certain of its food products," such as tortillas and tortilla chips. The SDDA contained an arbitration provision pertaining to claims "arising out of or relating to this Agreement," including all matters "regarding arbitration, matters relating to performance, breach, interpretation, meaning, construction, or enforceability of all or any part of this Agreement, and all claims for rescission or fraud in the inducement of this Agreement." The SDDA specified that such claims and causes of action "shall be resolved by arbitration through J–A–M–S/Endispute." Additionally, the SDDA contained a provision entitled "Governing Law" stating, "This Agreement shall be governed and controlled in accordance with the law of the State of Texas," and the "Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* shall also apply as needed to uphold the validity or enforceability of the arbitration provisions of this Agreement."

On August 27, 2008, Morrison filed a complaint against Gruma in the Garland County Circuit Court alleging violations of the AFPA, breach of contract, and unjust enrichment after Gruma unilaterally terminated the distribution agreement. Asserting the jurisdiction of the circuit court and his status as franchisee, Morrison averred that the AFPA "is applicable to a franchise if the franchisee is required to do business in Arkansas." Gruma filed a motion to dismiss Morrison's complaint on the basis that the circuit court lacked "subject-matter jurisdiction to resolve the suit at bar because [the parties] agreed to arbitration as an exclusive remedy for any disputes arising under the Store Door Distributor Agreement." Morrison filed an amended complaint on September 26, 2008, adding allegations of fraud, tortious |₃interference, and breach of covenant of good faith and fair dealing. On October 16, 2008, Gruma filed a motion to dismiss the amended complaint, asserting that the circuit court lacked jurisdiction because the Federal Arbitration Act "governs the SDDA and requires that all matters arising out of the SDDA be arbitrated."

In Morrison's response to Gruma's motion to dismiss, he stated that "arbitration cannot be compelled" under the Arkansas Uniform Arbitration Act, Ark.Code Ann. § 16–108–201(b)(2), because "torts are involved in the action." Morrison also contended that parties cannot "contract around" the AFPA. In his brief in support of the response, Morrison argued that, "It would simply disregard all legislative intent behind the drafting of the Arkansas Franchise Act to force Arbitration when the Arkansas Franchise Act has been breached." Elaborating further, Morrison cited four reasons in his brief why "arbitration should not be compelled": (1) the arbitration clause was invalid because Morrison "did not understand that he was waiving his right to having a trial"; the "arbitration clause at issue is overly broad"; and "the arbitration agreement is a contract of adhesion"; (2) "a complaint that states a cause of action in tort cannot be arbitrated"; (3) the Federal Arbitration Act does not compel arbitration of the claims pled in the amended complaint; and (4) a "contract cannot bypass" the AFPA.

Gruma filed a reply and incorporated brief reasserting the bases for its motion to dismiss Morrison's amended complaint and stated that the Federal Arbitration

Act governs the SDDA and preempts the Arkansas Uniform Arbitration Act, and the Federal Arbitration Act permits the arbitration of torts; the Arkansas Uniform Arbitration Act does not apply under the SDDA's choice-of-law provision; the AFPA was inapplicable because the SDDA did not require Morrison to establish or maintain a place of business in Arkansas; and Morrison's contention that the SDDA was an adhesion contract "is a question for the arbitrator."

On March 4, 2009, the circuit court filed a letter mailed to the parties' counsel denying Gruma's motion to dismiss because "the contract relied upon conflicts with the Arkansas Franchise Practices Act and the Act controls." The circuit court repeated this determination that the AFPA controlled in its March 30, 2009 order denying Gruma's motion to dismiss. This appeal followed.

■ An order denying a motion to compel arbitration is immediately appealable under Ark. R.App. P.-Civ. 2(a)(12). This court reviews an order denying a motion to compel de novo on the record, determining the issue as a matter of law. *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 205 S.W.3d 127 (2005).

Although Gruma presents several points on appeal to argue that the circuit court erred in denying its motion to dismiss, the central questions on appeal are whether the Federal Arbitration Act or the Arkansas Uniform Arbitration Act governs the SDDA, and whether Morrison's cause of action under the AFPA is subject to arbitration.

Section 15(i)(i) of the SDDA, entitled "Arbitration," states that claims or causes of action "solely for injunctive relief . . . may be brought in a court of law or by arbitration." But, under section 15(i)(ii), claims or causes of action for damages or monetary relief "shall be resolved by arbitration." Relevant here to Morrison's nonclass claim, section 15(i)(ii) of the SDDA provides as follows:

> Subject to the disclaimer and waiver in Subsection 15(g),[1] the bar of claims older than two years in Subsection 15(h)[2], and the conditional limitation in Subsection 15(h)(iii)[3], any and all other claims and causes of action arising out of or relating to this Agreement (including, without limitation, matters relating to this Subsection 15(i) regarding arbitration, matters relating to performance, breach, interpretation, meaning, construction, or enforceability of all or any part of this Agreement, and all claims for rescission or fraud in the inducement of this Agreement) shall be **resolved by**

1. Section 15(g) of the SDDA, entitled "Disclaimer and Waiver of Extraordinary Claims," states that "the parties mutually disclaim and waive the right to pursue against one another (1) any class action claims or causes of action of whatever nature, or (2) any claims or causes of action seeking punitive or treble damages." Section 15(i)(iii) allows for class action claims "[i]n the event that the parties' disclaimer and waiver in Subsection 15(g) of the right to assert class action claims and causes of action against one another is not legally enforceable." Further, section 15(i)(iii) establishes the venue for such class-action claims, and provides that once class certification is "judicially determined," the "claims and causes of action shall be referred to and resolved by arbitration."

2. The parties agreed in section 15(h) of the SDDA that "any claim or cause of action which came into existence, more than two years prior to the earlier of commencement of arbitration or filing of litigation in court is barred."

3. This appears to be a drafting or typographical error because there is no section "15(h)(iii)" in the SDDA. Apparently, the intended reference is to section 15(i)(iii), discussed above at n.1.

**arbitration** through J–A–M–S/Endispute ("JAMS") as provided in Subsection 15(i)(iii) below.

Section 15(i)(iv) of the SDDA outlines arbitration procedures and includes a clause stating that arbitration shall be conducted and subject to the provisions of applicable law, and the arbitrator(s) shall be entitled to grant any remedy or relief, subject to the limitations in Subsection 15(g), which a party would be entitled to receive under applicable law in a judicial proceeding." Section 15(i)(v) allows for judicial review of an arbitration award under the following conditions:

> In the event that the amount in controversy in arbitration exceeds $100,000, the parties shall have the right to have any arbitration award judicially reviewed by the courts of law as fully as would be allowed in the review of a decision of a master under Federal Rule of Civil Procedure 53, with findings of fact to be reviewed for clear error and issues of law to be decided de novo by the courts. In the event that the amount in controversy in arbitration is less than $100,000, the arbitration award shall be judicially reviewable by the courts of law under the law generally applicable to an arbitration award.

This court noted in *Pest Management, Inc. v. Langer*, 369 Ark. 52, 59, 250 S.W.3d 550, 556 (2007), that "[a]rbitration is strongly favored in Arkansas as a matter of public policy and is looked upon with approval by courts as a less expensive and more expeditious means of settling litigation and relieving docket congestion." Further, in determining whether the parties intended to arbitrate claims arising from a contractual relationship, "any doubts and ambiguities must be resolved in favor of arbitration." *Id.*

■ The threshold issue is whether there is a valid arbitration provision. *See, e.g., Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). This is a question of state law. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 147 S.W.3d 681 (2004); *see also Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Here, the SDDA's arbitration provision is broad and requires that "claims and causes of action arising out of or relating to this Agreement . . . shall be **resolved by arbitration**," to include

> without limitation, matters relating to this Subsection 15(i) regarding arbitration, matters relating to performance, breach, interpretation, meaning, construction, or enforceability of all or any part of this Agreement, and all claims for rescission or fraud in the inducement of this Agreement.

The parties' intent to arbitrate any claims arising from the SDDA and the relationship of the parties created by the SDDA is clear. The controversy here involves whether the agreement covers the tort claims asserted in the amended complaint, or whether it can validly apply to the AFPA claim.[4]

4. Morrison additionally argues that the SDDA "is clearly a contract of adhesion" and he "had absolutely no ability to negotiate the contract." The trial court never ruled on this point and we have repeatedly stated that the failure to obtain a ruling from the trial court is a procedural bar to appellate consideration on an issue. *See, e.g., Stills v. Stills*, 2010 Ark. 132, 361 S.W.3d 823. Similarly, Morrison states, "Also, it is the Plaintiff's contention that the agreement to Arbitrate was unconscionable under Arkansas law." This single sentence is the extent of his argument; in addition to the fact that the trial court never ruled on this point, Morrison provides neither citation to authority or convincing argument in support of his unconscionability contention. We have repeatedly stated that this court will not consider an argument, even a constitutional one, without

■ As to the first issue, Morrison contends that "claims sounding in tort are not arbitratable regardless of the language used in the arbitration agreement," citing *Terminix International Co. v. Stabbs*, 326 Ark. 239, 930 S.W.2d 345, 347 (1996), and *Hawks Enterprises, Inc. v. Andrews*, 75 Ark. App. 372, 57 S.W.3d 778 (2001). This assertion is only correct if the Arkansas Uniform Arbitration Act applies, rather than the Federal Arbitration Act. *Pest Mgmt.*, 369 Ark. at 59, 250 S.W.3d at 556; *see also Cash In A Flash Check Advance v. Spencer*, 348 Ark. 459, 466, 74 S.W.3d 600, 605 (2002) (stating that "the Federal Arbitration Act and the laws of other jurisdictions do not restrict the scope of arbitration as we do in this state"). Gruma's first argument on appeal is that the Federal Arbitration Act applies.

■ The Federal Arbitration Act "applies if the transaction involves 'interstate commerce, even if the parties did not contemplate an interstate commerce connection,'" and "the language of the FAA makes an arbitration provision enforceable in 'a contract evidencing a transaction involving commerce . . . to the limits of Congress' Commerce Clause power.'" *Pest Mgmt.*, 369 Ark. at 59–60, 250 S.W.3d at 556 (quoting *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Both Gruma and Morrison acknowledge that the SDDA involves interstate commerce, and section 15(k) of the SDDA specifically states that the Federal Arbitration Act applies "as needed to uphold the validity or enforceability of the arbitration provisions of this Agreement." Accordingly, the Federal Arbitration Act applies, and the cases Morrison relies on to assert that claims sounding in tort are not subject to arbitra-

tion under the Arkansas Uniform Arbitration Act are inapposite. *See id.*

■ With regard to the second issue— whether the SDDA arbitration provision is enforceable as to the AFPA claim—the decision by United States Eighth Circuit Court of Appeals in *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536 (8th Cir. 2002), is instructive. There, Arkcom filed a complaint asserting that it was a franchisee under the terms of a contract with Xerox and sought relief for alleged violations of the AFPA. The federal district court granted Xerox's motion to compel arbitration. Similar to Morrison's arguments in the present case, Arkcom argued on appeal that

> the agreement to arbitrate is nonetheless unenforceable because it frustrates the purposes of the AFPA by precluding the arbitrator from awarding remedies expressly authorized by the AFPA-actual damages in addition to lost profits, attorney's fees, costs of litigation, and treble damages in the case of fraud.

*Arkcom*, 289 F.3d at 538. Although the Eighth Circuit noted that the "Supreme Court has repeatedly held that the FAA preempts (i) state laws that 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration,'" and "(ii) state laws that condition the enforceability of arbitration agreements on requirements 'not applicable to contracts generally,'" it recognized that Arkcom raised a different issue. *Id.* (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). Instead, "Arkcom alleged that *this particular agreement to arbitrate* is unenforceable because it con-

---

citation or authority or convincing argument in its support, and it is not apparent without further research that the point is well-taken.

*Foremost Ins. Co. v. Miller Cnty. Cir. Ct.*, 2010 Ark. 116, 361 S.W.3d 805.

flicts with essential rights and remedies conferred by the [AFPA]." *Id.*

In its analysis of the question posed by Arkcom, the Eighth Circuit stated that, "This issue has frequently been raised by parties seeking to avoid arbitration of federal statutory claims that fell within the scope of their agreements to arbitrate." *Id.* As such an example, the Eighth Circuit cited *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), where the Supreme Court rejected an argument that federal statutory age discrimination claims are not arbitrable based on precedent establishing that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

Although it noted cases involving federal statutory claims, the Eighth Circuit resolved the question in *Arkcom* by relying on a decision involving state statutory claims and rights—*Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 230 (3rd Cir.1997), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997)— stating as follows:

> *Great Western,* a case involving the issue of whether arbitration would frustrate the purposes of a state statutory claim, provides direct guidance. The Third Circuit noted that, while the FAA preempts state laws limiting the selection of an arbitral forum, it does not broadly preempt substantive state law rights. Thus, the issue is not preemption, but whether the parties validly waived state law rights by entering into an arbitration provision that restricts the available remedies. That issue, the court concluded—

> cannot be asserted to avoid the *arbitration* agreed to therein. Rather, the party challenging the validity of such waivers must present her challenge to the arbitrator....

*Arkcom,* 289 F.3d at 539 (quoting *Great Western,* 110 F.3d at 231). Accordingly, the Eighth Circuit held that

> Arkcom and Xerox agreed to arbitrate this dispute, including Arkcom's AFPA claim. Whether the Agreement validly limits the arbitrator's remedies for an AFPA violation does not affect the validity of the agreement to arbitrate. Rather, issues of remedy go to the merits of the dispute and are for the arbitrator to resolve in the first instance.... [W]e conclude the dispute is arbitrable without regard to other issues argued on appeal-whether New York or Arkansas law governs, and whether the Agreement created a franchise governed by the AFPA. Those issues are for the arbitrator in the first instance, not this court or the district court.

*Id.* at 539–40.

In this case, we find *Arkcom* persuasive and hold that the agreement to submit claims and disputes to arbitration under the terms of the SDDA does not limit or waive any substantive rights Morrison has under the AFPA, should it be found to apply.[5] Instead, those statutory claims and relief provided by the AFPA may be resolved in the arbitral forum, as well as any other issues and claims raised by Morrison.[6] Therefore, we reverse the circuit

---

**5.** Gruma concedes this result, stating in its appellate brief that "[b]y arbitrating, Morrison will not lose the claim of AFPA violations or his substantive rights under the AFPA if they are determined to apply by the arbitrator."

**6.** We note that there is a potential conflict between the AFPA and the parties' agreement under 15(g) to waive "any claims or causes of action seeking punitive or treble damages." Nevertheless, we are not persuaded under the facts and arguments presented in this case

court and remand this case for proceedings consistent with our opinion.

Reversed and remanded.

that such potential conflict precludes resolution by an arbitrator—especially in light of the SDDA's choice-of-law provision ("This Agreement shall be governed by and construed in accordance with the laws of the State of Texas."). *Cf. PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 407, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (where plaintiffs sought treble damages in RICO action and the arbitration agreement prohibited an award of "punitive damages," the Court did "not know how the arbitrator [would] construe the [contract's] remedial limitations . . . [and] the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract"; therefore, "the proper course is to compel arbitration").