2010 Ark. App. 745

**PC SCALE, INC. and Transcomp Systems, Inc., Appellants**

v.

**ROLL OFF SERVICES, INC., Appellee.**

No. CA 09–1150.

Court of Appeals of Arkansas.

Nov. 3, 2010.

Mark Winfield Dossett and Jeffrey Michael Fletcher, Kutak Rock LLP, Fayetteville, for appellants.

Todd Patrick Lewis and Christopher Ray Smiley, Conner & Winters, LLP, Fayetteville, for appellee.

KAREN R. BAKER, Judge.

Appellants PC Scale, Inc., and Transcomp Systems, Inc. (collectively, "Transcomp") appeal from an order denying their motion to compel arbitration. We affirm.

Transcomp is a California company that develops and sells computer software. In 2004, it presented appellee Roll Off Services, Inc. (Roll Off) with a proposal to buy a software package. The proposal set forth the price and payment terms for the software and the license, support, and implementation services. Roll Off's president, Tom Smith, accepted the proposal on September 5, 2004. Shortly thereafter, on September 27, 2004, Smith signed three more documents in connection with the purchase: a Support Agreement that described the various levels of Transcomp's support packages; a License Agreement that granted licensure to twenty Roll Off computers and protected the software's confidentiality; and a Professional Services Agreement that contained the terms of Transcomp's installation, configuration, development, and training services. The License Agreement contained a clause that provided, in pertinent part:

> **Arbitration.** This Agreement is made and executed with the intention that the construction, interpretation, validity, and enforcement hereof shall be determined in accordance with, and governed by, the laws of the State of California, exclusive of its choice of law provisions. Any dispute arising between the parties under this Agreement shall be submitted to and finally settled by arbitration in Orange County, California, in accordance with the then pertaining rules for commercial arbitration of the American Arbitration Association.

The Professional Services Agreement also provided that it would be governed by California law and that "any dispute arising between the parties under this Agreement" would be submitted to arbitration. The proposal and the Support Agreement did not contain governing-law or arbitration clauses.

On July 23, 2008, Roll Off sued Transcomp in Benton County Circuit Court, alleging that Transcomp's software suffered from numerous bugs and deficiencies and did not perform as promised, despite Transcomp's attempted repairs. Roll Off also alleged that Transcomp failed to provide proper instructional materials. The complaint sought rescission based on fraud and damages for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and breach of warranty. Copies of the proposal, the Support Agreement, the License Agreement, and the Professional Services Agreement were attached to the complaint.

In response, Transcomp moved for a stay and to compel arbitration pursuant to the arbitration clauses in the License Agreement and the Professional Services Agreement. At hearings on the motion, Transcomp argued that the proposal and the Support Agreement, License Agreement, and Professional Services Agreement signed by Smith in September 2004 constituted a single transaction under California law and that, consequently, the parties' entire dispute was subject to arbitration. Transcomp also asserted that Roll Off's complaint invoked the License and Professional Services Agreements, triggering the arbitration clauses therein. Roll Off opposed arbitration. It argued, among other things, that Transcomp had not met its burden of proof under California law

that the four documents constituted a single transaction and that, in any event, its lawsuit was not based on a breach of the License Agreement and the Professional Services Agreement, which contained the arbitration clauses. The court decided that a question of fact was presented and held an additional hearing to receive testimony.

David Navarro, who designed the software for Transcomp, testified that his company drafted the proposal and the three Agreements. He said that the services listed in the Agreements were a package and that Transcomp would not start a project for a customer unless the customer had signed all three Agreements. Navarro also said that he understood that the dispute between Transcomp and Roll Off had nothing to do with software licenses or any engagement authorizations signed by Roll Off, as required under the Professional Services Agreement. Tom Smith testified that a representative of Transcomp told him that the three ⌊4Agreements he signed on September 27, 2004, were "separate agreements for the divisions" within the company. Smith also stated that he had no complaints about the Professional Services Agreement or the License Agreement; rather, his complaint was that "the software does not work" and that he did not get what he bargained for when he signed the proposal. He stated further that Transcomp's support was "horrendously bad" and that the software did not have a system manual.

Following the hearing, the court denied Transcomp's motion to compel arbitration. The court ruled that the documents signed by Roll Off were unambiguous and that they made no attempt to apply the arbitration clauses in the License Agreement and the Professional Services Agreement to any and all disputes. The court declared, however, that if it found, as the case developed, that Roll Off's basic cause of action fell under the License Agreement or the Professional Services Agreement, the court would "stop this case in its tracks" and send it to arbitration. Accordingly, the court denied Transcomp's motion without prejudice and gave Transcomp leave to renew its motion if the situation warranted. Transcomp filed this appeal.[1]

Public policy favors arbitration as a less expensive and more expeditious means of settling litigation and relieving docket congestion; accordingly, courts should resolve any doubts and ambiguities in favor of arbitration. *Gruma Corp. v. Morrison,* 2010 Ark. 151, 362 S.W.3d 898; *Gravillis v. Coldwell Banker Res. Brokerage Co.,* 143 Cal.App.4th 761, 49 Cal. Rptr.3d 531 ⌊5(2006).[2] On appeal, we review the denial of a motion to compel arbitration de novo, without deference to the circuit court's rulings. *See Terminix Int'l Co., LLC v. Trivitt,* 104 Ark.App. 122, 289 S.W.3d 485 (2008).[3]

The same rules of construction and interpretation apply to arbitration agreements as apply to agreements gener-

---

1. An order denying a motion to compel arbitration is immediately appealable. *CEI Eng'g Assocs., Inc. v. Elder Constr. Co.,* 2009 Ark. App. 259, 306 S.W.3d 447.

2. Both sides rely heavily on California law in their appellate briefs, as they did at the trial level. We therefore cite to California law as well as Arkansas law.

3. The standard of review on appeal is governed by Arkansas law, regardless of whether foreign law was applied in circuit court. *See generally Schlessinger v. Holland Am.,* 120 Cal.App.4th 552, 16 Cal.Rptr.3d 5 (2004); *River Mgmt. Corp. v. Lodge Props., Inc.,* 829 P.2d 398 (Colo.Ct.App.1991); *CSX Transp., Inc. v. Franklin Indus., Inc.,* 213 Ga.App. 778, 445 S.E.2d 861 (1994); *State v. Holden,* 964 P.2d 318 (Utah Ct.App.1998).

ally. *See id.; Toal v. Tardiff,* 101 Cal. Rptr.3d 397 (Cal.Ct.App.2009). The language of the contract governs, and the parties' intent should be ascertained from the agreement itself. *Hot Spring County Med. Ctr. v. Ark. Radiology Affiliates, P.A.,* 103 Ark.App. 252, 288 S.W.3d 676 (2008); Cal. Civ.Code §§ 1636, 1638, and 1639 (Deering 2005). Where the contract is unambiguous, its construction and legal effect are questions of law. *See A.G. Edwards & Sons, Inc. v. Myrick,* 88 Ark.App. 125, 195 S.W.3d 388 (2004); *Williams Constr. Co. v. Standard–Pac. Corp.,* 254 Cal.App.2d 442, 61 Cal.Rptr. 912 (1967). In interpreting a contract, the court may consider the circumstances under which the contract was made. *See Stokes v. Roberts,* 289 Ark. 319, 711 S.W.2d 757 (1986); Cal. Civ.Code § 1647 (Deering 2005).

Additionally, Arkansas and California apply a similar rule of construction when parties sign multiple agreements in the course of a transaction. Under Arkansas law, when two instruments are executed contemporaneously by the same parties in the course of the same transaction, they should be considered as one contract for the purpose of interpretation, in the absence of a contrary intention. *Stokes, supra.* Under California law, several contracts relating to the same matters, between the same parties, and made as part of substantially one transaction are to be taken together. Cal. Civ.Code § 1642 (Deering 2005). However, it does not necessarily follow that, for all purposes, the several instruments constitute one contract. *Malmstedt v. Stillwell,* 110 Cal.App. 393, 294 P. 41 (1930).

With these authorities in mind, we turn to Transcomp's arguments on appeal. Transcomp first contends that the proposal, Support Agreement, License Agreement, and Professional Services Agreement constitute "one single transaction that calls for arbitration to decide any dispute between the parties." We agree that the instruments signed by the parties are interrelated, but we do not agree that they constitute a single contract for all purposes. The License Agreement, for example, states that it covers "only the rights to use the Software and rights and obligations of the parties specifically set forth herein." It also recites that, to the extent that the customer requires related services "not specifically addressed in this Agreement," the customer must procure those services by "separate contract." Particularly with regard to arbitration, the documents reveal deliberate and studied distinctions among the proposal, Support Agreement, License Agreement, and Professional Services Agreement. Two of the documents contain arbitration and California choice-of-law clauses; two of the documents do not. The arbitration clauses in the License Agreement and the Professional Services Agreement, by their terms, apply to disputes "arising between the parties under this Agreement." Moreover, the License Agreement defines "Agreement" narrowly to mean "the combination of terms and conditions *set forth in this Software License Agreement* together with the terms of each Supplemental Schedules made a part hereof." (Emphasis added.)

Based on this contractual language, we conclude that the proposal and the three Agreements should not be regarded as a single contract for the purpose of arbitration. Their language evidences an intent to arbitrate only those disputes arising under the License Agreement and the Professional Services Agreement.

Transcomp cites *Brookwood v. Bank of America,* 45 Cal.App.4th 1667, 53 Cal. Rptr.2d 515 (1996), and several other cases for the proposition that an arbitration clause found in one contract must apply to another, related contract. Those cases,

654

however, were decided on the particular circumstances and contractual language contained in those agreements. Likewise, our holding rests on the precise language contained in the documents executed by the parties in this case, which, as explained in the preceding paragraph, demonstrates an intent to arbitrate only certain disputes. Transcomp argues further that the circuit court acted inconsistently in declaring the parties' instruments unambiguous, then applying rules of construction and hearing extrinsic evidence on the parties' intent. *See Myrick, supra; Williams Constr. Co., supra* (holding that, where the contract is unambiguous, its construction and legal effect are questions of law). Regardless of the manner in which the circuit court reached its decision, we conclude, in our de novo review, that its decision was correct and that the arbitration clauses were intended to apply only to disputes arising under the License Agreement or the Professional Services Agreement.

Transcomp argues next that, in any event, the arbitration clauses in the License Agreement and the Professional Services Agreement should apply because Roll Off based its lawsuit on those Agreements. Roll Off's complaint does refer to and attach the License and Professional Services Agreements, and the complaint requests that those Agreements, along with the proposal and the Support Agreement, be rescinded. However, Tom Smith testified at the hearing that he had no problem with the License Agreement or the Professional Services Agreement and that his complaint was instead based on a claim that "the software does not work." Upon hearing Smith's testimony the circuit court denied Transcomp's motion to compel arbitration; but the court did so without prejudice and stated that the motion was subject to renewal if Roll Off's basic cause of action was later determined to fall within the License or Professional Services

Agreement. That is the ruling from which Transcomp appeals.

Given the particular facts of this case, we uphold the circuit court's very limited ruling. The court obviously decided that, in light of Smith's narrowing and defining the scope of his lawsuit, the case did not require arbitration at that point. The court did not, however, foreclose the possibility of arbitration in the future if developments in the case should show that Roll Off has broadened its causes of action beyond the parameters claimed by Smith. In fact, the court expressed an unequivocal intention to stop the lawsuit and submit it to arbitration should that occur. We therefore conclude that the court's denial without prejudice stands.

Roll Off raises certain arguments in its brief regarding the enforceability of the arbitration clauses and the applicability of those clauses to its tort claims. We decline to reach those arguments at this time because Roll Off's claims have not yet been submitted to arbitration. Any ruling on our part would be purely advisory, and our appellate courts do not issue advisory opinions. *Riceland Foods, Inc. v. Pearson,* 2009 Ark. 520, 357 S.W.3d 434.

Affirmed.

VAUGHT, C.J., and GLOVER, J., agree.