Cite as 2023 Ark. App. 527

# ARKANSAS COURT OF APPEALS
### DIVISION II
#### No. CV-20-748

| | |
|---|---|
| LYLE D. FOSTER, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF OLLIE HAMMETT, JR., DECEASED; AND FOR THE ESTATE OF LUCILLE HAMMETT, DECEASED <br><br> APPELLANT <br><br> V. <br><br> SIMMONS BANK F/K/A SIMMONS FIRST NATIONAL BANK <br><br> APPELLEE | Opinion Delivered November 15, 2023 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-20-2505] <br><br> HONORABLE MACKIE M. PIERCE, JUDGE <br><br> AFFIRMED |

## N. MARK KLAPPENBACH, Judge

The appellant, Lyle Foster, became the personal representative of the estates of Ollie Hammett, Jr., deceased, and Lucille Hammett, deceased (collectively "the Hammetts"), after this appeal commenced. The Hammetts were owners of commercial property located at 7305 Cantrell Road, Little Rock, Arkansas, for which appellee, Simmons Bank f/k/a Simmons First National Bank, was mortgagee for the purchase of the property. Following the Hammetts' purchase of the property, Entergy Arkansas, Inc., installed electrical poles along Cantrell Road that included the Hammetts' property. The Hammetts initially filed an inverse-condemnation action against Entergy and included claims against the sellers of the property. The Hammetts ultimately abandoned that case. The Hammetts then instituted

the present action against Simmons, alleging that the bank had a duty to pursue the inverse condemnation against Entergy on their behalf. The circuit court entered an order dismissing the Hammetts' claims against Simmons, and this appeal followed. We affirm.

I. *Facts*

On or about April 25, 2014, the Hammetts entered into a real estate mortgage with Simmons for the purchase of commercial property located at 7305 Cantrell Road in Little Rock (the "property"). In the summer of 2014, Entergy erected electrical poles on and electrical lines along Cantrell Road, including along the Hammetts' property. The Hammetts claimed Entergy had no written or verbal easements and paid nothing to them for placing the poles on their property. The Hammetts alleged the poles were erected in existing exits and entrances that severely diminished the value of the property by dramatically curtailing the manner in which traffic could access and park on the property. The Hammetts further argued that Entergy trespassed on their property and erected the electrical poles "exercising their ostensible rights of condemnation."

In early 2015, the Hammetts gave notice to Simmons concerning Entergy's alleged encroachment on the property with the expectation that Simmons would file an inverse-condemnation action on their behalf against Entergy. The Hammetts argued that under paragraph 20 of the mortgage, they authorized Simmons to intervene on their behalf with respect to Entergy's encroachment. Paragraph 20 of the mortgage states in its entirety:

> CONDEMNATION. Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent

2

domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior security agreement.

The Hammetts claimed that paragraph 20 obligated Simmons to take appropriate action to protect the property against the encroachment by Entergy. Simmons did not pursue any action against Entergy on the Hammetts' behalf. The Hammetts contended that Simmons cut off all substantive communications with them when they requested that Simmons take action to remedy the encroachment. The Hammetts refinanced their mortgage with Simmons in April 2019. On November 5, 2019, the Hammetts closed on the sale of the property to a third party. The Hammetts' counsel sent a letter to Simmons's counsel on November 4, 2019, advising that, although the Hammetts were planning to permit closing funds to be paid to Simmons to obtain release of the mortgage, they were doing so with a reservation of their rights and remedies against the bank.

The Hammetts ultimately sued Simmons, contending that as a result of Simmons's refusal to institute an action against Entergy pursuant to paragraph 20 of the mortgage, they were entitled to recover damages for (1) diminution in the value of the property due to Entergy's purported encroachment; (2) interest that had accrued from the time they hired their own legal counsel to pursue inverse condemnation; (3) professional fees for surveying,

3

engineering, and accounting; and (4) legal fees incurred in the inverse-condemnation action. The Hammetts further claimed that Simmons had violated their right to privacy by disclosing confidential banking information to counsel for the buyers of the property prior to closing. The Hammetts also alleged that someone at Simmons had posted information about their mortgage on Mr. Hammett's Facebook page, which was viewed by at least forty-seven people, resulting in damages for injury to reputation, mental anguish, embarrassment, and humiliation.

The Hammetts claimed that in the 2019 refinance of their mortgage, Simmons backdated the refinance in such a way that the Hammetts appeared to be two months delinquent in their mortgage payments. The Hammetts claimed Simmons wrongfully charged them excessive late fees. The Hammetts further asserted that in October 2019, prior to their sale of the property, Simmons placed the loan account in a default status and alleged Simmons attempted to wrongfully foreclose on the property. The Hammetts argued the property eventually sold for $285,000 less than the appraised value prior to Entergy's encroachments. The Hammetts' contended that their causes of action against Simmons did not accrue until they suffered an actual loss when they sold the property. The Hammetts filed their claims on the basis of these facts against Simmons on April 3, 2020, for breach of contract, negligence, invasion of privacy, breach of fiduciary duties, and violation of the Arkansas Deceptive Trade Practices Act ("ADTPA").

Simmons moved to dismiss the Hammetts' claims on April 20, 2020, pursuant to Arkansas Rule of Civil Procedure 12(b)(6), asserting they were barred by the statute of

4

limitations and for failure to state a claim upon which relief could be granted. Simmons noted that the Hammetts named it as a party in their inverse-condemnation action against Entergy. Simmons argued that the Hammetts' claims for breach of contract, negligence, breach of fiduciary duty, and violation of the ADTPA, which were based primarily on the bank's alleged refusal to pursue an action against Entergy, were barred by the applicable statute of limitations. Simmons further argued that the occurrence rule applied to most of the Hammetts' claims; thus, the statute of limitations for the Hammetts' claims began to run when the alleged occurrence of the wrongful conduct happened, not when the wrongful conduct was discovered.

Simmons noted that the Hammetts' complaint argued that the bank had refused to take action against Entergy and cut off all substantive communications with them in "early 2015." Simmons further noted that the Hammetts alleged the bank's wrongful acts required them to hire their own counsel in January 2015. Simmons stated that the statute of limitations for breach of contract and actions under the ADTPA is five years, while the statute of limitations for negligence and breach of fiduciary duty is three years. Simmons argued that the Hammetts' claims related to its alleged failure to take action against Entergy and cutting off communications with the Hammetts about the Entergy dispute accrued more than five years before the Hammetts filed suit in April 2020. Simmons similarly asserted that the Hammetts failed to plead facts sufficient to state a cause of action for breach of contract, negligence, invasion of privacy, breach of fiduciary duty, and violation of the ADTPA.

5

On June 8, 2020, the circuit court heard oral argument on Simmons's motion to dismiss. On August 19, the circuit court by letter order indicated that it was "inclined to grant Defendant's Motion to Dismiss in total and fully adopt Defendant's arguments." The circuit court directed counsel to submit a precedent, and Simmons prepared the proposed order. The Hammetts objected to the following paragraph in the proposed order:

> The Court dismisses with prejudice Plaintiffs' breach of contract, negligence, breach of fiduciary duty, and Arkansas Deceptive Trade Practices Act claims that are based on alleged acts and omissions that took place beyond the applicable limitations periods. Even if these claims were timely, they would be dismissed without prejudice for failure to state facts on which relief can be granted. Plaintiffs' remaining claims, including but not limited to invasion of privacy, are dismissed without prejudice for failure to state facts on which relief can be granted.

The circuit court signed the order over the Hammetts' objections, and the Hammetts have appealed.

## II. *Issues on Appeal*

The Hammetts assert two issues on appeal. First, the Hammetts contend the circuit court erred in concluding that their claims were barred by the applicable statutes of limitations. Second, the Hammetts claim the circuit erred in concluding that their complaint failed to state facts upon which relief can be granted.

## III. *Standard of Review*

When reviewing a circuit court's order granting a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Brown v. Towell*, 2021 Ark. 60, 619 S.W.3d 17. Our rules require fact pleading, and a

complaint must state facts, not mere conclusions, in order to entitle the pleader to relief. We treat only the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Id.* This court considers questions of law de novo but will not reverse the circuit court's grant of a motion to dismiss absent an abuse of discretion. *Id.*

## IV. *Statute of Limitations*

For their first point on appeal, the Hammetts argue that (1) the statute of limitations would have accrued from the date of the 2019 refinance agreement; (2) the statute of limitations was tolled or suspended; (3) the nature and extent of the Hammetts' tort claims could not reasonably be known or fairly estimated until the sale of the property in 2019; and (4) Simmons never repudiated the refinanced mortgage, so it waived and is estopped from asserting its statute of limitations defense.

The granting of a Rule 12(b)(6) dismissal is reviewed under the abuse-of-discretion standard. *Nichols v. Swindoll*, 2023 Ark. 97, 668 S.W.3d 493. In order to prevail on a motion to dismiss a complaint on the basis of a statute-of-limitations defense, it must be barred on its face. *Id.*

### A. Date of Accrual

The Hammetts allege that their causes of action for breach of contract, negligence, breach of fiduciary duties, and violation of the ADTPA did not accrue until the after the 2019 refinance of their mortgage with Simmons. In response, Simmons argues that its refinance of the Hammetts' mortgage in 2019 has no bearing on whether it violated any

7

duties to the Hammetts by refraining from intervening in their inverse-condemnation action against Entergy in 2015 or in allegedly terminating communications with the Hammetts regarding the same.

In routine contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. *Phillips v. Union Pac. R.R. Co.*, 89 Ark. App. 223, 201 S.W.3d 439 (2005). The test for determining when a breach-of-contract action accrues is the point when the plaintiff could have first maintained the action to a successful conclusion. *Id.* As to negligence claims, the limitations period begins to run when there is a complete and full cause of action and, in the absence of concealment or wrong, when the negligence occurs and not when it is discovered. *Hill v. Hartness*, 2017 Ark. App. 664, 536 S.W.3d 649. The same is true for claims for negligence, fraud, and breach of fiduciary duty. *Id.* In the absence of concealment, a claim alleging a breach of fiduciary duty accrues when the alleged breach occurs. *In re Est. of Smith*, 2020 Ark. App. 113, 597 S.W.3d 65.

The Hammetts argue that the refinancing of their mortgage in 2019 created a new contract with Simmons that, in turn, restarted the accrual of the statute of limitations. However, the Hammetts base their claims for breach of contract, negligence, breach of fiduciary duties, and violation of the ADTPA on the facts that Simmons did not institute or intervene in the Hammetts' inverse-condemnation action against Entergy and that Simmons ceased communicating with them about the matter. Taking the plaintiffs' allegations as true, these actions all occurred more than five years before the refinance. The Hammetts admit

8

that they notified Simmons about the encroachment by Entergy in early 2015. The Hammetts further concede that they hired their own counsel in January 2015 to pursue the inverse-condemnation action due to Simmons's refusal to initiate the litigation. The Hammetts failed to assert any allegations linking the earlier alleged failure of Simmons to protect against Entergy's encroachment to the 2019 refinancing of the Hammetts' mortgage. Thus, on its face, the Hammetts' claims were barred by the statute of limitations.

## B. Tolling of the Statute of Limitations

Once it is clear from the face of the complaint that the action is barred by the applicable statute of limitations, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was, in fact, tolled. *Beckworth v. Diamante, a Priv. Membership Golf Club, LLC*, 2010 Ark. App. 814, 379 S.W.3d 752, 760.

The Hammetts claim that making regular payments on the refinanced loan from spring 2019 until the closing on the sale of the property in October 2019 tolled that statute of limitations pursuant to Ark. Code Ann. § 16-56-111 (Repl. 2005), because a voluntary partial payment tolls the statute of limitations. *Id.* The Hammetts concede that Ark. Code Ann. § 16-56-111(b) is usually applied to a lender's claim against a debtor but argue that it should also apply to a debtor's claim against the lender. As noted by Simmons, Arkansas courts have never extended the application of section 16-56-111(b) in such a manner, and we decline as well. The fact that the Hammetts continued to make payments on the 2019 refinanced mortgage is wholly unrelated to the Hammetts' claims that Simmons breached the original mortgage agreement by failing to pursue their claims for inverse condemnation

9

against Entergy for a cause of action that accrued in 2015. Accordingly, the Hammetts' payments on the 2019 refinanced mortgage did not toll the statute of limitations on their breach-of-contract claims.

## C. Ascertainment of Damages

The Hammetts further argue that the statute of limitations did not accrue until they suffered an actual loss at the closing for the sale of the property because their injuries were not ascertainable until the property sold for $285,000 less than the prior appraised value. The same argument was addressed by this court in *Hill*, 2017 Ark. App. 664, 536 S.W.3d 649. In *Hill*, we stated: "Hill contends that there were no damages in existence to support a cause of action until the property was conveyed. To accept this argument, however, Arkansas would have to abandon the occurrence rule and adopt the so-called 'date of injury' rule." *Id.* at 5, 536 S.W.3d at 652. Our supreme court has expressly refused to abrogate the occurrence rule and adopt the "date of injury" rule; thus, the occurrence rule remains. *Id.* at 5–6, 536 S.W.3d at 652. Moreover, the "discovery rule" does not apply to breach-of-contract actions. *Filat v. Rand*, 2015 Ark. App. 316, 463 S.W.3d 301.

By filing an inverse-condemnation action against Entergy, the Hammetts demonstrated they were aware that Entergy's placing power poles and lines along their property may have reduced the value of the property. The Hammetts were on notice of their potential claims against Simmons in early 2015 when Simmons declined to pursue the inverse condemnation against Entergy on their behalf. Accordingly, the Hammetts'

10

purported injuries arose no later than early 2015 when they hired personal counsel to file an inverse-condemnation action against Entergy.

## D. Waiver or Equitable Estoppel

The Hammetts further contend that the refinancing of their mortgage with Simmons in early 2019 restarted the statute of limitations on their claims or lulled them into a false sense of security regarding the timeliness of their claims against the bank; thus, Simmons either waived or should be estopped from asserting their statute-of-limitations defense. The United States District Court for the Eastern District of Arkansas has considered arguments similar to the Hammetts', stating:

> Plaintiffs' ignorance of their rights does not prevent the operation of the statute of limitations. The statute is tolled only when the ignorance is produced by affirmative and fraudulent acts of concealment. Likewise, mere silence by the alleged wrongdoer usually does not toll the running of the statute of limitations. In rare instances, such as when a confidential relationship exists between the parties, the failure to speak may be the equivalent of fraudulent concealment. Further, under different circumstances, Arkansas courts have determined that the relationship between a bank and its customer is generally one of debtor and creditor and not a fiduciary relationship. Something more than the mere existence of the traditional banking relationship has been required to establish special circumstances requiring disclosure.
>
> . . . .
>
> Application of the doctrine of estoppel typically requires that the plaintiff demonstrate reliance upon the conduct of the defendant. Arkansas courts have explained that the issue is whether the conduct or representations of the [defendant] are so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions. The plaintiff still must exercise reasonable diligence, even if allegations of estoppel are at issue."

*Reece v. Bank of N.Y. Mellon, Tr. for CIT Mortg. Loan Tr. 2007-1*, 381 F. Supp. 3d 1009, 1019–20 (E.D. Ark. 2019) (internal quotations and citations omitted).

The Hammetts fail to allege that the 2019 refinance of their mortgage with Simmons was in any way related to, or arose as a result of, the earlier alleged failure of Simmons to pursue their inverse-condemnation proceedings against Entergy. Thus, whether Simmons accepted payments from the Hammetts on the refinanced mortgage has no bearing on, or relation to, their earlier claims that in 2015 Simmons failed to protect the property from Entergy's encroachment. Furthermore, the Hammetts' breach-of-contract, negligence, breach-of-fiduciary-duty, and ADTPA claims all arose at the latest in January 2015 upon the Hammetts' hiring of an attorney to pursue inverse condemnation against Entergy. Viewing the facts in the light most favorable to the plaintiffs, we conclude that the circuit court properly concluded the statute of limitations barred the Hammetts' claims against Simmons for breach of contract, negligence, breach of fiduciary duty, and violation of the ADTPA.

V. *Failure to State a Claim*

In light of our holdings on the issues of the Hammetts' claims for breach of contract, negligence, breach of fiduciary duty, and violation of the ADTPA being barred by the corresponding statute of limitations, we need not reach the merits of the Hammetts' second point on appeal as to those claims. Thus, we only consider whether the circuit court erred by granting the motion to dismiss as to the invasion-of-privacy claims.

VI. *Invasion of Privacy*

12

The Hammetts claim that Simmons invaded their right to privacy by (1) discussing the Hammetts' loan account information with counsel for the purchaser of the property and (2) allowing a Simmons employee to post the Hammetts' loan account information on Mr. Hammett's Facebook page that was subsequently viewed by at least forty-seven people.

In support of these claims, The Hammetts first allege that an employee of Simmons spoke with counsel for the buyer of the property and disclosed information concerning the Hammetts' mortgage account. The Hammetts have not alleged any specifics concerning precisely what information concerning their loan account was shared with the buyer's attorney. Similarly, the Hammetts have not alleged that the information shared with their buyer's attorney was subsequently disseminated to the public. Simmons conceded that such conversation took place but claimed that that the conversation could not rise to the level of invasion of privacy.

Arkansas courts have consistently held that "[p]ublic disclosure of private facts is publicity of a highly objectionable kind, given to private information about the plaintiff, even though it is true and no action would lie for defamation." *McMullen v. McHughes Law Firm*, 2015 Ark. 15, at 15, 454 S.W.3d 200, 209. This court has described the necessary elements to establish an invasion-of-privacy claim as follows:

> To succeed on this invasion-of-privacy claim, [the plaintiff] must prove . . . (1) that he sustained damages; (2) that appellees made a public disclosure of a fact about [the plaintiff]; (3) that prior to disclosure the fact was not known to the public; (4) that a reasonable person would find the disclosure highly offensive; (5) that appellees knew or should have known that the disclosed fact was private; (6) that the fact was not of legitimate public concern; and (7) that the public disclosure was the proximate cause of [the plaintiff's] damages.

13

*Duggar v. City of Springdale*, 2020 Ark. App. 220, at 14–15, 599 S.W.3d 672, 684.

The United States Court of Appeals for the Eighth Circuit, interpreting Arkansas law, has concluded: "As to invasion of privacy, the simple disclosure of private information to one other person . . . is not sufficient to state a claim." *Wood v. Nat'l Comput. Sys., Inc.*, 814 F.2d 544, 545 (8th Cir. 1987). Simmons argued that the disclosure was made to one person, the attorney for the Hammetts' buyer; as such, the information was not "published" as set forth in *Wood*, *supra*.

Second, the Hammetts claim that an unidentified employee of Simmons posted information concerning the Hammetts' mortgage account on Mr. Hammett's Facebook page. The Hammetts fail to make any attempt to identify the name of the individual who posted this information, the date(s) the information was posted, precisely what information concerning their mortgage was posted on Facebook, and whether the post was taken down or deleted. Similarly, the Hammetts failed to attach a copy of the Facebook post to their complaint.

The court in *Duggar*, *supra*, noted that Arkansas Rule of Civil Procedure 10(d) mandates that "[a] copy of any written instrument or document upon which a claim or defense is based shall be attached as an exhibit to the pleading in which such claim or defense is averred unless good cause is shown for its absence in such pleading." In reliance on Rule 10(d), the *Duggar* court held: "We are unable to determine whether the information contained in the records was private or known to the public because Duggar did not attach

14

the records pursuant to Rule 10(d).  Duggar did not state a claim upon which relief can be granted; the circuit court's dismissal was therefore proper." *Duggar*, 2020 Ark. App. 220, at 15–16, 599 S.W.3d at 685.  Thus, to overcome a motion to dismiss, *Duggar* required that documents upon which an invasion-of-privacy claim is based must be attached to the complaint.

Following this reasoning, the circuit court properly dismissed the Hammetts' invasion-of-privacy claims for failure to state a claim upon which relief could be granted.  The Hammetts' invasion-of-privacy claims asserted only conclusory allegations.  In relation to Simmons's disclosure of loan information to counsel for the purchaser of Hammetts' property, such disclosure could not rise to the level of a "public disclosure" in accordance with *Wood*, *supra*.  In relation to the Hammetts' vague allegations concerning an unidentified person posting their loan information on Mr. Hammett's Facebook page at some point in time, in accordance with *Duggar* and Ark. R. Civ. P. 10(d), the record is devoid of the necessary evidence to determine whether the information contained in the alleged Facebook post was, in fact, private or unable to be readily retrieved by the public.  Accordingly, we hold that the circuit court properly concluded the Hammetts failed to state a claim against Simmons for invasion of privacy upon which relief could be granted.

Affirmed.

ABRAMSON and THYER, JJ., agree.

*Niswanger Law Firm PLC*, by: *Stephen B. Niswanger*, for appellant.

*Quattlebaum, Grooms & Tull PLLC*, by: *E. B. Chiles IV* and *Christoph Keller*, for appellee.